55 So.2d 511

## BOARD OF EDUCATION OF CHOCTAW COUNTY et al. v. KENNEDY.

### 2 Div. 296.

Supreme Court of Alabama.

Dec. 6, 1951.

Lindsey & Christopher, Butler, for appellant.

480

Scott & Porter, Chatom, for appellee.

STAKELY, Justice.

L. J. Kennedy (appellee) is a teacher and high school principal of continuing service status in the public school system of Choctaw County, Alabama. He has established his tenure by virtue of the fact that he has been employed under contract with the Board of Education of Choctaw County, Alabama, as principal of the South

Choctaw High School at Silas, Alabama, for the last twenty-two consecutive years. § 352, Title 52, Code of 1940.

On or about March 30, 1951, L. J. Kennedy received notice in the form of a letter addressed to him from Wiley C. Allen, who was then Superintendent of Education of Choctaw County, Alabama, advising him that the Choctaw County Board of Education would meet on April 30, 1951, for the purpose of considering the cancellation of his contract with the Board of Education of Choctaw County. L. J. Kennedy requested a written statement of the reasons for considering the cancellation of his contract. Within a period of less than fifteen days after receiving notice of the time and place of the proposed consideration of the canceling of his contract, he requested in writing a hearing on the charges made against him by the County Board of Education. The County Board of Education set April 20, 1951, as the date for the hearing. The hearing was held at the appointed time at Butler, Choctaw County, Alabama. By agreement between the parties a reporter was present and transcribed all of the testimony and made up the record of this proceeding before the County Board of Education. Witnesses testified both for and against L. J. Kennedy. At the conclusion of the hearing the County Board of Education took under advisement the matter of the cancellation of the foregoing contract and on April 30, 1951 rendered their decision by resolution purporting to cancel the contract of L. J. Kennedy.

L. J. Kennedy then filed in the Circuit Court of Choctaw County, Alabama, a petition for writ of mandamus against the members of the County Board of Education and Wiley C. Allen, as Superintendent of Education of Choctaw County, Alabama (appellants), ordering them to vacate and annul their resolution and order purporting to cancel appellee's contract and further requesting the court to direct appellants to reinstate appellee as principal of the foregoing school and to renew his contract as principal. At the same time L. J. Kennedy filed in the Circuit Court of Choctaw County, Alabama, the tran-script of the record of the proceedings held by the County Board of Education.

The Circuit Court of Choctaw County, Alabama, issued an alternative writ of mandamus as prayed for in the petition, directing appellants to show cause on or before the 19th day of June, 1951 as to why they should not be required to comply with the prayer of the petition. Appellants filed their answer to the petition and the appellee filed his replication thereto. On June 19, 1951 the court at a hearing set for the purpose reviewed the record of the proceedings before the County Board of Education, with the result that the court ordered a writ of mandamus to issue against appellants, directing them to reinstate appellee as principal of the foregoing school. The court found, as shown in its judgment or order, that the evidence offered at the hearing before the County Board of Education in support of the charges against appellee, was not sufficient to prove the charges and that the order and resolution of the County Board of Education was arbitrarily unjust. Appellants made a motion for a rehearing which the court overruled. This appeal followed.

■■ I. The present proceedings were commenced by the Board of Education of Choctaw County for the cancellation of the contract of L. J. Kennedy under the provisions of the Teacher Tenure Law. § 351 et seq., Title 52, Code of 1940. It is claimed by appellants that this act is unconstitutional because it fails to provide for due process. But the County Board of Education cannot invoke action of the court under the statutes which comprise the Teacher Tenure Law and then later, when dissatisfied with the result, assail their own action on the theory that the statutes under which the action was taken are constitutionally offensive. Baldwin v. Kouns, 81 Ala. 272, 2 So. 638; Woodward Iron Co. v. Bradford, 206 Ala. 447, 90 So. 803; Larry et al. v. Taylor, 227 Ala. 90, 149 So. 104. It can be pointed out that no constitutional question was raised until the motion was made in the circuit court to set aside the judgment of the circuit court, which means that the constitutional question was raised too late. Vernon v.

State, 240 Ala. 577, 200 So. 560, certiorari denied Vernon v. Wilson, 61 S.Ct. 837, 313 U.S. 559, 85 L.Ed. 1519; Alabama Cartage Co. v. International Brotherhood of Teamsters, etc., 250 Ala. 372, 34 So.2d 576, 2 A.L.R.2d 1273; 11 Am.Jur. p. 772. We could rest our opinion here but think it well to proceed so as not to leave any impression that the statute is lacking in due process requirements.

No particular form of procedure is prescribed for hearings under the statutes here in question but of course due process must be observed. This is the rule generally applicable as to hearings provided for by statute before administrative agencies. State ex rel. Steele v. Board of Ed. of Fairfield, 252 Ala. 254, 40 So.2d 689. The Teacher Tenure Law in its provisions clearly contemplates the rudimentary requirements of fair play with reasonable notice and opportunity to be present, information as to charges made and opportunity to controvert such charges, the right to examine and cross-examine witnesses and submit evidence and be heard in person and by counsel. Ex parte Homewood Dairy Products Co., 241 Ala. 470, 3 So.2d 58; Almon v. Morgan County, 245 Ala. 241, 16 So. 2d 511; State ex rel. Steele v. Board of Ed. of Fairfield, supra. It is claimed that it is only required that a written statement be given the teacher of the reasons for cancellation of his contract and in other words that no evidence must be adduced against him on the hearing. The statute provides that the contract with the teacher can not be canceled until a hearing is held, if a hearing is requested by the teacher. The use of the word "hearing" in § 357, Title 52, Code of 1940, shows a manifest purpose of compliance with the requirements of due process of law. "A requirement of a hearing in the exercise of quasi-judicial powers has obvious reference to the tradition of judicial proceedings with respect to those fundamental requirements of fairness which are of the essence of due process in a proceeding of a judicial nature." 42 Am. Jur. p. 481, § 138. "It is the duty of the court to construe a statute so as to make it harmonize with the constitution if this can be done without doing violence to the terms of the statute and the ordinary canons of construction." Almon v. Morgan County et al., 245 Ala. 241, 16 So.2d 511, 516. A statute can be adopted without expressly containing provisions which meet constitutional requirements but in such terms as not to exclude them, and so to justify a court in holding that the statute was intended to be subject to such requirements and considered as embodied in the statute. Montgomery Southern Railway Co. v. Sayre, 72 Ala. 443; Almon v. Morgan County et al., supra. In this connection in Almon v. Morgan County et al., supra, it was aptly said: "And so when an act confers on an administrative officer or board the power and duty to make a conclusive finding of facts which affects the substantial rights of another, when to do so requires procedural due process, and there is nothing to indicate an intention that such process shall not be applied, the court may in carrying out the intention of the legislature hold that such process was intended to be applied, when to do so is necessary to uphold its constitutionality on that account. * * * This applies to one's tenure of office under an act providing for his removal for cause. * * *"

We have no hesitation in holding that the statutes in question meet the requirements of due process.

II. Citing State v. Board of Education of Fairfield, 252 Ala. 254, 40 So.2d 689, it is argued that the court erred in setting aside the action of the County Board of Education in canceling the contract of L. J. Kennedy and in reinstating him as a tenure teacher without making such reinstatement subject to another hearing before the County Board of Education. In the cited authority the teacher was prevented from presenting evidence which she had the right to present. Here the parties presented all the evidence which they wished to present or thought advisable to present and there is no complaint to the contrary. There is, therefore, no point in referring the case back to the County Board of Education for another hearing. The statute makes no such requirement. § 358, Title 52, Code of 1940.

III. It is contended that the action of the County Board of Education may not be reviewed by mandamus proceedings as now provided by § 358, Title 52, Code of 1940, as amended, Pocket Part, but must be by appeal. There is no merit in this position. The legislature clearly has the right to provide for a review by mandamus to determine whether the action of the Board of Education is made in compliance with the statutes comprising the Teacher Tenure Law and whether such action is arbitrarily unjust. In State ex rel. McIntyre v. McEachern, 231 Ala. 609, 166 So. 36, 39, this court said: " 'When a statute provides for the removal of an officer for cause, it contemplates notice to the officer of the charge, and requires a tribunal of some kind to determine whether the cause for removal exists and whether such officer can be removed.' * * * The Legislature prescribed that tribunal—the court of county commissioners. The finding of that tribunal may be reviewed by certiorari or mandamus (respectively when appropriate), if it is wholly 'unsupported by the evidence, or is wholly dependent upon a question of law, or is seen to be clearly arbitrary, or capricious'. "

IV. A number of reasons were advanced as grounds for the cancellation of the contract of L. J. Kennedy which may be briefly stated in substance as follows: (1) L. J. Kennedy had written a check for $125.00 on school funds to make a personal loan to a third party. (2) The school buildings were in an unsanitary condition on one or two occasions when the Superintendent of Education visited the school. (3) L. J. Kennedy had not made certain improvements on the school campus from a $200.00 appropriation which the Board of Education had made for making such improvements. (4) L. J. Kennedy had failed to cooperate with the lunch room program. (5) L. J. Kennedy had failed to cooperate with the bus drivers. (6) L. J. Kennedy had failed to cooperate with the teachers in the school.

V. With reference to the check for $125.00 drawn by L. J. Kennedy on school funds, Wiley C. Allen, then Superintendent of Education of Choctaw County, testified that he was unable to find a check stub entered in the check book for this check and he was also unable to find an invoice to justify this expenditure. He thereupon reported the matter to the County Board of Education and was authorized by the board to notify the chief examiner of public accounts and request that an accountant be sent to Choctaw County to examine the books of the school of which L. J. Kennedy is principal. According to the testimony of Charles K. White, an accountant with the Examiners for the State of Alabama, he explained to Mr. Kennedy that the check for $125.00 was charged on the bank statement on July 7, 1950 and L. J. Kennedy then told him that he had made a few advances or loans with school funds and this check for $125.00 represented a loan to a former janitor of the building. L. J. Kennedy however stated to him that he had paid back or redeposited all amounts that he had advanced or loaned and that this particular amount was entirely replaced in the bank not later than September, 1950. The witness then testified that he attempted to see if the deposits in the bank exceeded the total recorded receipts. He found that the deposits exceeded the receipts by the amount of $191.50.

The witness testified that the amount replaced could not be verified by the items or amounts deposited. The bank balance for the year's operation indicated that all funds were accounted for with the exception of the small amount of $1.93. He further testified that none of the money handled by L. J. Kennedy represented state or county funds. All of this money which L. J. Kennedy handled was money raised within the school by the different classes and the different departments.

L. J. Kennedy testified at the hearing. He did not deny writing the $125.00 check. His testimony shows that through error he wrote the $125.00 check unintentionally on school funds. He showed that from time to time he had loaned money in small amounts from his personal funds to some of his friends. On this particular occasion a Mr. Tindle requested a loan in the amount of $125.00. Neither of them having a check, he (L. J. Kennedy) tore a

484

check from the back of the check book used to write checks and withdrawals of school funds in the payment of school bills. He testified that he wrote many more checks on school funds in paying the school bills than he wrote on his personal account. He testified that without being conscious of what he had done, he gave Mr. Tindle the check drawn on the school account. This check was drawn on June 26, 1950 and cleared the bank in the early part of July, 1950. During the summer months when a less number of checks were being written the bank did not send him a bank statement each month. But that the first of September 1950 he received a bank statement from the bank covering the school account together with the canceled checks he had drawn in paying school accounts and the checks included the $125.00 check referred to. He then learned or discovered for the first time that he had drawn the check on the wrong account. He immediately replaced the money in the school account before the Board of Education or anyone else ever said anything about the matter or had complained about it. Some two months later on or about November 2nd, Mr. White, the Auditor from the State Department, appeared on the scene and made his audit stating that complaint had been made about the $125.00 check. The money, however, had been replaced long before that time. He showed that there is no bank in Silas, where the school is located, and he had to do business with the Choctaw Bank of Butler, some 25 or 30 miles away. In taking in a great amount of small change at the little store operated within the school where candy and soft drinks, etc., are sold, along with other small change, taken in from various sources, it was necessary for him to convert this money into a check to be mailed to the bank for deposit. He used a system of exchanging this currency and small change with one of the local merchants for the merchant's personal check and then deposited the check given him by the local merchant in the bank by mail. He then received from the bank a post card indicating a lump sum deposit for whatever amount the check was made. This accounts for the reason that the auditors could not trace or identify replacement of the particular $125.00. However the auditor agreed that L. J. Kennedy's deposits in the bank according to the bank statement exceeded the amount that he had taken in from the various sources. With reference to the fact that there was no check stub or entry made for the $125.00 check, it was pointed out that if L. J. Kennedy unintentionally wrote the check on school funds, he would not have thought to enter the amount of the check on his journal, nor would he have made on the school checking book a stub for the amount of the check. It was shown that L. J. Kennedy at all times had in his personal account in the bank ample funds on the date the check was given to the date the check cleared the bank to have more than paid the $125.00 check.

On the undisputed testimony in the case with reference to this particular charge, we think that the court was correct in finding that an unintentional and honest mistake had been made and that immediately upon discovery of the error and before any complaint had been made about the matter, full replacement was made for the withdrawal. We feel satisfied that the court was correct in holding that as to this item the finding of the board, that this matter constituted embezzlement or wrong, was arbitrarily unjust.

We have carefully considered the evidence in respect to the other charges made before the County Board of Education against L. J. Kennedy and see no reason to state the evidence in respect to these other charges. The court was entirely justified in holding that any action of the County Board of Education in sustaining these other charges was arbitrarily unjust. It results that the judgment of the lower court must be affirmed.

Affirmed.

LIVINGSTON, C. J., and BROWN and LAWSON, JJ., concur.