Doris Johnson filed an action against the Alabama Agricultural and Mechanical University, its president, and its trustees, seeking a declaratory judgment as to the validity of her removal from the faculty of that University. The trial court ruled that the plaintiff was not entitled to relief, and she appeals.
Johnson was a tenured member of the University's faculty. Her relationship with the school was governed by a faculty handbook, which provided the following procedure for terminating a tenured faculty member:
 "1. The employee will be advised in writing of the cause or causes of his or her proposed suspension or termination."
 "2. The employee will be advised of the names of witnesses and nature of testimony anticipated."
 "3. The employee will be given a meaningful opportunity to be heard in his/her own behalf and to present witnesses to the circumstances in question."
 "4. The President of the University will appoint a tribunal who posses [sic] some academic expertise and impartiality."
 "5. The tribunal will make a determination of the culpability charged; if guilt is found on any charge, they will so advise the President along with recommendations for action to be taken. The President's decision will be final."
Mrs. Johnson was informed of the proposed termination by a letter from the University's vice president for academic affairs. The letter stated that Johnson had been charged with insubordination, disrespect for the dean of her department, refusal to follow approved procedures in addressing department affairs, and inability to cooperate with faculty and students. It listed the names of five persons as prospective members of a hearing committee which would determine Johnson's guilt or innocence of the charges. It informed Johnson that the president would choose three persons from among the names listed, unless Johnson voiced an objection to any of the prospective panel members by notification of the vice president's office. Although Johnson was allowed to present witnesses and cross-examine the University's witness, Johnson was not allowed to have legal representation during the hearing. The letter stated that the associate dean of Johnson's department would present the case against her; it gave a list of witnesses and it stated which of the charges each witness's testimony would relate to.
Johnson did not register objection to any of the prospective panel members. A hearing committee was chosen and it conducted a four-hour-and-fifteen-minute inquiry into the charges. The panel then rendered a written decision finding Johnson guilty of each charge. In light of Johnson's fourteen years of service to the University, the committee recommended that Johnson be allowed one more opportunity to correct the problems underlying the charges prior to terminating her.
The committee's findings were forwarded to the president, who presented the question of what action to take on the hearing committee's finding of guilt to a committee called the "Executive Officers for Planning" (E.O.P.). The E.O.P. is a committee charged with advising the president about goals, policies, procedures, and regulations for the University. The president, who is chairman of the committee, is not bound by the committee's decisions. He merely looks to it for advice. The E.O.P. sent Johnson a letter stating that it had decided to place her on "strict probation" and that she was to "cease and desist from" the behavior which led to the charges. The president testified that the letter constituted his decision.
Following the E.O.P.'s letter to Johnson, the associate dean of Johnson's department wrote the president a letter requesting a reconsideration of the E.O.P.'s decision. *Page 338 
The president then contacted Johnson and asked her if she agreed with the E.O.P.'s decision, and she replied that she did not. When asked if she would like to appear before the E.O.P. and explain her position, Johnson replied that she would. Johnson and the assistant dean were allowed to appear before the E.O.P. on separate occasions.
After the E.O.P. reconsidered the case, the president sent Johnson a letter dated February 4, 1983, stating that he had decided to postpone any action on the charges. The letter informed Johnson that pending a final decision she was relieved of her duties with pay. The letter purported to take the place of the earlier letter from the E.O.P.
On May 30, 1983, the president sent Johnson a letter stating that he had decided that the best interests of the University would be served by making the separation permanent. Johnson was officially terminated as of May 31, 1983.
On appeal Johnson argues that the University's policy of not allowing grievants to be represented by lawyers at termination hearings constituted a violation of her due process rights, citing Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011,25 L.Ed.2d 287 (1970); Board of Education v. Kennedy, 256 Ala. 478, 55 So.2d 511 (1951).
This issue was not preserved by any ruling below and is, therefore, not before us. We observe, however, that it is undisputed that Johnson's tenured status constituted a property interest which was terminable only in accordance with due process of law. Due process requirements are not fixed; they vary according to the circumstances. Determining the due process rights of a grievant in an administrative hearing requires weighing the importance of the property right at stake and the possible value of any additional procedural safeguards against the government's interest in providing an efficient mechanism for determining the parties' rights. See Mathews v.Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18
(1976); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011,25 L.Ed.2d 287 (1970). In this case we must weigh the value of legal counsel in protecting Johnson's reasonable expectations of future employment against the University's interest in having an efficient process of ridding itself of faculty members who are incompetent or who violate established rules and procedures.
The question of whether the due process guarantees of the Fifth and Fourteenth Amendments afford the right to legal counsel in an administrative proceeding is not susceptible to a simple answer. See 3 Davis, Administrative Law Treatise, § 14:17 (1980); Annot., Right to Assistance by Counsel inAdministrative Proceedings, 33 A.L.R.3d 229 (1970). For instance, a recipient of assistance under the Aid to Families with Dependent Children program is entitled to a hearing at which counsel must be allowed to appear on the recipient's behalf before the aid can be terminated. Goldberg v. Kelly,397 U.S. 254, 270, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970). On the other hand, prison inmates do not have a right to be represented by counsel in prison disciplinary hearings. Baxterv. Palmigiano, 425 U.S. 308, 314-15, 96 S.Ct. 1551, 1555-56,47 L.Ed.2d 810 (1976); Wolff v. McDonnell, 418 U.S. 539, 570,94 S.Ct. 2963, 2981, 41 L.Ed.2d 935 (1974).
The authority on the question of the right of college professors to counsel in termination hearings is scant. InFrumkin v. Board of Trustees, Kent State University,626 F.2d 19 (6th Cir. 1980), the university allowed the professor to have an attorney present at the termination hearing but did not allow him to cross-examine witnesses or object to the introduction of evidence. His only role was to consult and advise his client and to present a closing argument. In ruling that the procedure did not violate the grievant's due process rights, the court agreed with the university's argument that due process did not require it to conduct a "full-fledged adversary trial." Since the university afforded the professor an ample opportunity to present his case to the hearing committee in a manner calculated to achieve a fair result, his due process rights were not violated. *Page 339 
The case of Toney v. Reagan, 467 F.2d 953 (9th Cir. 1972), involved a non-tenured professor who claimed that he had been terminated as a result of the exercise of his First Amendment rights. Although he was not tenured, the professor was entitled to a termination hearing under state law. Although the grievance procedure specifically excluded lawyers from the proceeding, the court ruled that, in the absence of a showing of a special need for a lawyer by the grievant, the procedure was adequate.
In addition to the protections of the United States Constitution, the Alabama Constitution of 1901, Art. I, §§ 6 and 13, provides that persons are not to be deprived of property rights except by due process of law. Several Alabama cases have considered questions regarding procedural due process in administrative hearings, and there are dicta in some of those opinions from which an argument could be made for the proposition that under Alabama law the right to legal representation at administrative hearings is an incident to the right to due process. See Medical Services Administration v.Duke, 378 So.2d 685, 686 (Ala. 1979); Katz v. Alabama StateBoard of Medical Examiners, 351 So.2d 890, 892 (Ala. 1977);Board of Education of Choctaw County v. Kennedy, 256 Ala. 478,482, 55 So.2d 511, 514 (1951). The right to counsel was not at issue in those cases, however, so any language to the effect that there must be a right to counsel in order for there to be minimal compliance with due process guarantees is dictum.
All that is necessary to satisfy minimal due process requirements is that a person in jeopardy of serious loss be given notice of the charges against him and that he be afforded a meaningful opportunity to present his case to a qualified, impartial decision maker. The judicial model of a full-blown evidentiary hearing is not always required. "All that is necessary is that the procedures be tailored, in light of the decision to be made, to `the capacities and circumstances of those who are to be heard.'" Mathews v. Eldridge, 424 U.S. 319,349, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976), quoting Goldbergv. Kelly, 397 U.S. at 268-69, 90 S.Ct. at 1020-21. In this case the University informed Johnson of the charges and of the names of adverse witnesses; it gave her an opportunity to object to any of the prospective panel members, to cross-examine adverse witnesses, and to present witnesses and evidence on her behalf. The only aspect of the procedure which arguably denied her a meaningful opportunity to present her case was the refusal to allow her to have legal representation. She did not, however, object to the absence of counsel prior to the hearing, and there is nothing in the record to indicate that she had any special need for representation. For these reasons, we do not reach the question of whether due process requires that a person be allowed legal representation if it is properly insisted upon. We agree with some of our sister states that college professors as a class are far less likely than welfare recipients, prison inmates, or other less educated persons to require the services of an attorney in holding a fair hearing. While the right to counsel may exist under these facts, it does not appear that Johnson preserved the issue for review.
Following the hearing committee's finding of guilt and its recommendation of probation, the E.O.P. and the president reviewed the case in order for the president to determine what course of action to take. In the course of reviewing the case, the president examined Johnson's personnel file and relied in part on the information in that file in deciding to terminate her. Johnson argues that the president of the University violated her due process rights by reviewing her personnel file. She argues that the president should not have been allowed to go beyond the record of the hearing in making his decision whether to terminate her or place her on probation.
The handbook provides that upon a determination of culpability by the hearing committee the president will make a decision as to the action to be taken. Since *Page 340 
the panel found Johnson guilty of offenses which constituted cause for her termination, the president was entitled at that point to terminate her if he had chosen to do so. Surely Johnson was not prejudiced by the president's action of reviewing her file before making a decision. With regard to the requisites of due process, it is not necessary in an administrative proceeding that the decision maker consider only evidence which would be admissible in a court of law. It is sufficient to consider evidence that "reasonable men are accustomed to rely on" in making rational decisions. Toney v.Reagan, supra, at 958. It stands to reason that the purpose of keeping personnel files is to provide information to be used in making decisions on employment matters such as this. Johnson had copies of most of the contents of the file and much of the file consisted of letters she had written and evaluation forms which contained her comments.
Finally, Johnson argues that the University was bound by the E.O.P.'s original decision placing her on probation and that since she did not violate the probation the president should not have terminated her.
Johnson's argument ignores the fact that she agreed to allow further hearings on the question of her status after the letter in question was sent. Implicit in her request to appear before the E.O.P. was a recognition that further hearings might result in a new decision by the president. Having sought relief from the original decision, she cannot now complain that a different decision was issued.
The trial court's judgment is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, SHORES, ADAMS and HOUSTON, JJ., concur.
ALMON, J., concurs in the result.