This is a defamation case.
Plaintiff Joel Morrison was suspended from Davidson High School when marijuana was found in his car on the campus on January 18, 1982. On February 3, 1982, Joel's parents appealed to the Mobile County Board of Education to remove or purge the suspension from Joel's record. The request to remove or purge the suspension was denied.
Plaintiff Ernest Morrison, the father of Joel Morrison, voluntarily addressed the Mobile County Board of Education at a meeting of the school board held on May 12, 1982, and requested that the board purge from his son's record the suspension from Davidson High School. During the course of the discussion of the matter, there were several exchanges between Morrison and school board members. Some of those exchanges appear in the record, as follows (this excerpt is from what the record indicates is a transcript of the proceedings before the school board, and that transcript carries the phrase "verbatim transcript of audio tape of board meeting (typed directly from tape in rough draft form with no corrections made)"; we have made no correction either):
"[After an opening prayer and a motion was made to approve the minutes of a previous meeting of the board, the following transpired:]
"MR. ALEXANDER: All opposed. The motion's carried. First delegations Ernest Morrison. Mr. Morrison is appearing before us involving a matter with your son Joel. What's this about?
"DR. HAMMONS: It's a, he's asked for a hearing in front of the Board. It's on page 9, item 16. He asked to appear before the board for a hearing regarding the decision of the principal, the Discipline Committee.
"DR. HAMMONS: and the Superintendent as their recommendations have been filed.
"MR. ALEXANDER: . . ., it's been up through you?
"DR. HAMMONS: Yes, sir.
"MR. ALEXANDER: All right sir, go ahead.
"MR. MORRISON: Thank you, first of all I would like [to] say on this particular day on about January 17th, my son's in class and there were two boys leaving class going to my car to get some books, supposedly; when they got to the car; the car is locked so they returned to go back to the class and the guard, the teacher or someone stopped them and asked them where were the books they were going after. They say they couldn't get the books because the car was locked. So the guard, in turn asked my, the boy who's, took him back to the car and asked him who's car was it? He said Joel Morrison's. He say go get him out of class and bring him to me. They went in the classroom and got my son out of class, and told him if he did not unlock the car they would put him in . . .
"MR. ALEXANDER: Mr. Morrison . . .
"MR. MORRISON: . . . jail
"MR. ALEXANDER: Let me say just one thing before we go any further. The, obviously this a matter that involves some of our school employees have investigated . . . *Page 1088 
"MR. MORRISON: Right.
"MR. ALEXANDER: . . . something or have been involved in something and you have a different opinion of what happened.
"MR. MORRISON: We are talking about the facts Mr. Alexander.
"MR. ALEXANDER: The facts as you present them . . .
"MR. MORRISON: The facts as they are.
"MR. ALEXANDER: Now as you see fit to bring these facts out publicly at the Board table, I think the Board will then have every right to let our employees present their side of the story in the same forum.
"MR. MORRISON: This is what I have been doing since January 19th.
"MR. ALEXANDER: O.K. I just, I, I, you know, I just want you . . .
"DR. GILLIARD: Mr. Chairman.
"MR. MORRISON: Excuse me please.
"MR. ALEXANDER: No, you excuse me, Mr. Morrison.
"MR. MORRISON: All right, go ahead on.
"DR. GILLIARD: Mr. Chairman, I, . . .
"MR. ALEXANDER: Yes sir, go ahead.
"DR. GILLIARD: I have read this file and I think this ought to be discussed in Executive Session.
"DR. HAMMONS: I have recommended an Executive Session if you will notice it.
"MR. ALEXANDER: Well, I just, all I am pointing out here is I, we're not going to allow just one side of the story to be told . . .
"MR. MORRISON: I've told . . .
"MR. ALEXANDER: . . . told publicly and I have no, I have no problems with Mr. Morrison addressing whatever he wants to, to the Board . . .
"DR. GILLIARD: Neither do I.
"MR. ALEXANDER: . . . it should be clearly understood that the Board should then have every right to present its side of it publicly also.
"DR. GILLIARD: Well you understand my. . . .
"MR. ALEXANDER: I underst. . . .
"DR. GILLIARD: . . . reason because, if it, I don't want to discuss your son publicly by name . . .
"MR. MORRISON: Right.
"DR. GILLIARD: I don't want to discuss our employees publicly by name; I don't want you to discuss them publicly in front of me by name.
"MR. MORRISON: I understand.
"DR. GILLIARD: O.K.
"MR. MORRISON: May, with all due respects to the Board, Mr. Alexander this is what, I have been trying, I have been trying to do since January, this happened in January of this year and here it is April, the 11th and I have been seeking means of his staying in; my son was suspended in April when this happened in January and I have been going through all of this since January and by me going and pursuing further, nobody even told me anything as to how to go about doing these things; it's just a matter of my . . .
"DR. HAMMONS: Wait, wait, wait . . .
"MR. MORRISON: . . . attorney been doing.
"* * * *
"MR. ALEXANDER: the way we set that procedure up?
"DR. HAMMONS: Mr. Campbell.
"ATTORNEY CAMPBELL: Oh, I was looking something up.
"MR. ALEXANDER: When we set up the new disciplinary procedure didn't we make provisions for appeals to come to this Board on suspensions if they wanted to come.
"ATTORNEY CAMPBELL: Well, the procedure indicated the appeal does not come to the Board unless it's a suspension indefinitely.
"MR. ALEXANDER: Well, the point I am making is, . . .
"ATTORNEY CAMPBELL: This is not . . . *Page 1089 
"MR. ALEXANDER: . . . doesn't make any difference, he's back in school.
"ATTORNEY CAMPBELL: . . . it still has to make a . . ., that's what I am saying it's no . . .
"MR. ALEXANDER: Anyway when the Superintendent asked me about it, it was my opinion that it was a moot question. That the youngster is back in school the only thing we are suppose to hear is whether or not he should be in school.
"ATTORNEY IRBY: The, what we are asking for is not to purge the young man's record.
"DR. GILLIARD: That's it, that's the question of the whole matter.
"ATTORNEY CAMPBELL: Well, what I am saying, if you will look at page 98, number 21 on the policy that refers to parents or guardians of students who have been indefinitely suspended and I think the logical highlight is once the Superintendent's committee make the decision; if there is an indefinite suspension then they have a right to go to the Board, because you are out there in limbo. But this is not an indefinite suspension, he is back to school.
"DR. GILLIARD: When did the incident occur?
"MR. MORRISON: January 17th of 1981.
"DR. BERGER: 81 or 82?
"DR. MORRISON: 82, I am sorry.
"DR. GILLIARD: Was he suspended at that time?
"MR. MORRISON: No sir, this is another matter that we need to get into.
"DR. GILLIARD: When was he suspended?
"MR. MORRISON: He was suspended two, three days after the incident.
"MR. ALEXANDER: Wait, wait a minute, you say this another matter, another matter other than what the incident in his suspension.
"MR. MORRISON: If you will allow me to say . . .
"MR. ALEXANDER: Go ahead, go ahead.
"MR. MORRISON: . . . what I would o.k., thank you.
"MR. ALEXANDER: If he wants to talk let him, he's got the right to address the Board.
"* * * *
"MR. MORRISON: . . . [M]y only relief was to try to get a hearing here before this Board to try and get some of these things taken from my son's record, because I feel they are illegal and not right.
"DR. BERGER: Mr. Chairman.
"MR. ALEXANDER: Yes sir.
"DR. BERGER: Another point, I think he brought up an excellent point, if we are going to try this case in public; I think we ought to do it just like we do a tenure case have it opened to the public or whenever this gentleman desires and then both sides, can, let them sit there and let us decision if he, if that's . . .
"MR. ALEXANDER: Dr. Berger, Dr. Berger if we start opening this Board up to having he . ., everything that goes on and not let our employees take care — Mr. Morrison has seen fit to come here and address the Board; he has the right to do so . . .
"DR. BERGER: I agree.
"MR. ALEXANDER: . . . but in my opinion he has now opened the door for us telling our side of it and of course whatever relevant parts of our report; he's called some of the people in the system liars and said that we have operated improperly and hadn't been told this and hadn't been told that and I am going to ask the Superintendent to make the, our side of the story public.
"(ALL TALKING)
"MR. ALEXANDER: I asked Mr. Morrison before he started, I suggested to him that we were going to do that and he kept, kept on with this thing.
"MR. MORRISON: At anything you desire Dr. Hammons.
"* * *
"DR. GILLIARD: Well, o.k., I stand firm on number one; your statements that *Page 1090 
you're making now be put in a legal form and have an Executive Session to discuss this for the protection of the good name of all the people involved.
"MR. ALEXANDER: Well, but you know, what concerns me Dr. Gilliard is, as you know, you don't unring a bell when it's already been rung, I mean, what we had here was a situation where one of our resource officers met with the youngster Joel Morrison and according to his report he unlocked the, Joel unlocked the car and he went in there and found some marijuana cigarettes in the car, and, you know . . .
"MR. MORRISON: That's your position that their position.
"MR. ALEXANDER: That's right that's our position. And we're not going to, you know, we, I think that once Mr. Morrison decides that he wants to bring the matter out publicly here that both sides of the story ought to be made public.
"MR. MORRISON: I appreciate that."
A radio station in Mobile, WBLX, taped and later broadcast that portion of the meeting in which Dan Alexander stated the following:
 "Well but you know, what concerns me Dr. Gilliard is, as you know, you don't unring a bell when it's already been rung, I mean, what we had here was a situation where one of our resource officers met with the youngster Joel Morrison and according to his report he unlocked the, Joel unlocked the car and he went in there and found some marijuana cigarettes in the car, and, you know . . ."
That statement is the basis of plaintiffs' allegation of defamation as to Counts 2 and 3 of their complaint. The statements made by Dan Alexander to Ernest Morrison pertaining to plaintiff Joel Morrison's suspension were made after Mr. Alexander had reviewed the resource officer's written report of marijuana being found in Joel Morrison's car at Davidson High School. No other member of the Mobile County Board of Education made any statements concerning the presence of marijuana in Joel Morrison's car. A verified transcript of the School Board meeting is of record herein. It shows no defamation but, rather, only the normal business of the Mobile County School Board in considering a matter specifically raised in public by the plaintiffs themselves. Defendants' comments were not "accusations" but merely constituted fair response to charges leveled by the plaintiffs. In fact, it was suggested to plaintiffs that the matter could better be considered in private, but the plaintiffs wanted a public airing of their complaints.
The substance of this statement was broadcast by WBLX radio station, and Joel's father, on Joel's behalf, brought this suit. The trial judge, after conducting a hearing, granted defendants' motion for summary judgment. Plaintiffs appealed.
The trial judge granted summary judgment on the basis that the statements made at the school board meeting by the defendants were made in the line and scope of their public authority and in the performance of their duties as public officials or public officers, and, therefore, were absolutely privileged. O'Barr v. Feist, 292 Ala. 440, 296 So.2d 152
(1974). We agree. In O'Barr, this Court held:
 "The question of whether the communication was privileged or not by reason of its character, or the occasion on which it was made, is a question of law to be decided by the court. Kenney v. Gurley, 208 Ala. 623, 95 So. 34; Interstate Electric Co. v. Daniel, 227 Ala. 609, 151 So. 463.
 "Privileged communications are divided into two classes, namely, those which are absolutely privileged and those which are qualifiedly or conditionally privileged. In cases where absolute privilege obtains there is no liability. Depending upon the circumstances of the case, there may or may not be liability with respect to qualifiedly or conditionally privileged communications. The distinction between the two classes is said to be that the protection of absolutely privileged communications is not at all dependent upon their bona fides, while qualifiedly *Page 1091 
or conditionally privileged communications are merely freed from the legal imputation of malice, and become actionable only by virtue of the existence of express malice. Adams v. Alabama Lime Stone Corp., 225 Ala. 174, 142 So. 424; Lawson v. Hicks, 38 Ala. 279, citing Cooke on Defamation, 28, 31, 60, and Starkie on Slander, 229, 292.
 "With respect to what are absolutely privileged communications, we made this observation in the case of Tonsmeire v. Tonsmeire, 281 Ala. 102, 199 So.2d 645:
 "`In defamation, the only absolutely privileged communications are those made in the course of legislative or judicial proceedings, and acts of state made under authority of law. See 33 Am.Jur. Libel and Slander, Sec. 125.'"
292 Ala. at 445, 296 So.2d at 156 (emphasis added).
In Webster v. Byrd, 494 So.2d 31 (Ala. 1986), this Court held:
 "Whether a communication is privileged by reason of its character or the occasion on which it was made is a question of law for the judge. Fulton v. Advertiser Co., 388 So.2d 533, 537 (Ala. 1980), cert. denied, 449 U.S. 1131 [101 S.Ct. 954, 67 L.Ed.2d 119] (1981)."
In that case, the trial court found that a letter of termination was privileged, but did not specify whether the privilege was absolute or conditional. This Court noted:
 "The only absolutely privileged communications that have been heretofore recognized under Alabama law are those made during legislative or judicial proceedings, or those contained in legislative acts made under authority of law. Mead Corporation v. Hicks, 448 So.2d 308 (Ala. 1983)."
Byrd argued that the letter of termination was an absolutely privileged communication because it commenced a quasi-judicial proceeding. We agreed:
 "This Court has held that tenure hearings are quasi-judicial in nature, State Tenure Commission v. Madison County Board of Education, 282 Ala. 658, 213 So.2d 823 (1968); Board of Education of Choctaw County v. Kennedy, 256 Ala. 478, 55 So.2d 511 (1951); State v. Board of Education of Fairfield, 252 Ala. 254, 40 So.2d 689 (1949), but this Court has never decided, until today, whether communications made in the course of quasi-judicial proceedings are absolutely privileged. We came near to expressing an opinion in this matter with our decision in Dunning v. Boyes, 351 So.2d 883 (Ala. 1977), cert. den., 436 U.S. 917 [98 S.Ct. 2261, 56 L.Ed.2d 757] (1978), where we held that defamatory communications made in the course of grievance proceedings under collective bargaining contracts are only conditionally privileged, but that case was expressly overruled in Surrency v. Harbison, 489 So.2d 1097 (Ala. 1986), where this Court held that an alleged statement made in the course of a grievance hearing is absolutely privileged. The courts are divided as to whether an absolute privilege attaches to communications made in the course of quasi-judicial proceedings. Some courts recognize only a conditional privilege. Gardner v. Hollifield, 97 Idaho 607, 549 P.2d 266 (1976); Elder v. Holland, 208 Va. 15, 155 S.E.2d 369 (1967). The majority view, and the view we now adopt, is that an absolute privilege attaches to communications made in the course of quasi-judicial proceedings. Brubaker v. Board of Education, School District 149, Cook County, Illinois, 502 F.2d 973 (7th Cir. 1974), order clarified, 527 F.2d 611 (7th Cir. 1975), cert. den., 421 U.S. 965 [95 S.Ct. 1953, 44 L.Ed.2d 451] (1975); Mock v. Chicago, R.I. P.R. Co., 454 F.2d 131 (8th Cir. 1972); Roberts v. Lenfestey, 264 So.2d 449
(Fla.Dist.Ct.App. 1972).
 "Where an administrative proceeding is conducted with the same safeguards as those provided in judicial proceedings, e.g., notice and opportunity to be present, information as to charges made and opportunity to controvert such charges, the right to examine and cross-examine witnesses, the right to submit evidence on one's behalf, the right to be *Page 1092 
heard in person, and the presence of an objective decision-maker, see Board of Education of Choctaw County v. Kennedy, supra, that proceeding is quasi-judicial in nature and statements made in the course of the proceeding should be absolutely privileged."
We have found no Alabama case pertaining to absolute privilege and its applicability to statements made by school board members and officials in the course of official proceedings of the board. Some courts have held that statements made by school board members in the course of official proceedings are entitled to an absolute privilege, but other courts have held that such statements are entitled only to a qualified or conditional privilege. See, Annotation, "Libel and Slander: Privileged Nature of Statements or Utterances by Member of School Board in Course of Official Proceedings," 85 A.L.R.3d 1137.
In Smith v. Helbraun, 21 A.D.2d 830, 251 N.Y.S.2d 533
(N.Y.App. 1964), the court held that members of a city board of education are clothed with absolute privilege for what is said or written by them in discharging their responsibilities. The court upheld a lower court's order granting summary judgment as to the school board members who had adopted a resolution relieving the superintendent of schools of his position. See, also Samuelson v. Vinyard, 120 Or. 197, 251 P. 719 (1926);Christensen v. Marvin, 273 Or. 97, 539 P.2d 1082 (1975); Kohnv. Davis, 390 So.2d 1246 (Fla.Dist.Ct.App. 1980); Nodar v.Galbreath, 462 So.2d 803 (Fla. 1984).
In the case before us, it is not necessary for us to decide whether every statement, written or oral, made by board members during the course of their meetings enjoys an absolute privilege. We need only apply the rule of O'Barr v. Feist,supra, to hold that the allegedly defamatory statements made here, "by reason of [their] character" and "the occasion on which [they were] made," were privileged, as a matter of law.
The record affirmatively shows here that the statements made by Dan Alexander to Ernest Morrison pertaining to Joel Morrison's suspension were made after Alexander had reviewed the resource officer's written report that marijuana had been found in Joel Morrison's car at Davidson High School. No other member of the school board made any statements concerning the presence of marijuana in Joel Morrison's car, as is shown by a verified transcript of the proceedings of the school board, which is a part of the record, and portions of which are quoted in this opinion. We are of the opinion that the record before the trial court shows that the school board was conducting its regular business meeting and that the matter complained of was specifically raised in public by the plaintiff. We are of the opinion that the trial court was authorized to conclude, as a matter of law, that defendant's comments were fair response to charges leveled by the plaintiff. In fact, the record shows that it was suggested to Mr. Morrison that the matter could better be considered in "executive session," but that Morrison wanted a public airing of the complaint.
The judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, and HOUSTON, JJ., concur.
BEATTY, J., concurs in the result.