This case concerns the validity of a certificate of need ("CON")[1]
granted to Auburn Medical Center, Inc. ("AMC"), by the State Health Planning and Development Agency ("SHPDA") in 1984. The East Alabama Medical Center ("EAMC") brought a declaratory-judgment action in 1997 to have the CON declared invalid. The trial court held that the CON was invalid; the Court of Civil Appeals reversed the trial court's judgment. We now reverse the judgment of the Court of Civil Appeals. *Page 953 
 Procedural History
The validity of the CON at issue in this case has been the subject of litigation in one form or other for nearly 18 years. As would be expected, the procedural background in the case is lengthy and convoluted. The Court of Civil Appeals' opinion gives a good procedural history of the case. Auburn Med. Ctr., Inc. v. East Alabama Health CareAuthority, [Ms. 2990162, May 11, 2001] 847 So.2d 942 (Ala.Civ.App. 2001). In order to avoid needless repetition, we provide only the highlights of that history.
In October 1983, AMC applied for a CON to build and operate a 64-bed hospital in Auburn. In November 1983, EAMC applied for a CON seeking approval of an additional 54 beds at an existing hospital. SHPDA approved AMC's CON on January 10, 1984. On May 17, 1984, SHPDA (whose board members were at that time newly appointed) reversed its ruling approving the CON for AMC and also denied EAMC's request at the same time. On April 4, 1987, AMC sued both SHPDA and EAMC, claiming that they had conspired to deprive AMC of its CON. AMC and EAMC have been embroiled in a controversy over this CON ever since. The Court of Civil Appeals restored the approval of AMC's CON in a 1990 decision. See Auburn Med. Ctr., Inc.v. East Alabama Health Care Auth., 583 So.2d 1342 (Ala.Civ.App. 1990).
On December 7, 1992, SHPDA approved a request from AMC for a project modification of the CON because of changes that had occurred in the hospital industry since the original CON had been approved in 1984. Thereafter, AMC entered into a construction contract with The Robins and Morton Group, a construction company, pursuant to which The Robins and Morton Group was to build the hospital facility. SHPDA approved the modification and extended the validity of the CON for 12 months. On November 9, 1994, EAMC applied for a CON to build an ambulatory surgery center in Auburn. SHPDA denied that application on June 17, 1997, citing as its reason the CON it had granted AMC for a hospital facility, which at that point still had not been built. It was after this SHPDA ruling that EAMC initiated the present action to have the CON granted to AMC declared invalid.
The trial court invalidated the CON because, in its view, the time limit on the CON had expired under SHPDA regulations. Thus, the question before us, as the Court of Civil Appeals phrased it, is: "Did [AMC's] CON expire or was the time limit on the CON tolled, based on SHPDA Rules and Regulations, § 410-1-11-.01?" Auburn Med. Center, 847 So.2d at 947. Section 410-1-11-.01 provided, at the time of these proceedings:
 "Duration of Certificate of Need. A certificate of need issued under these rules shall be valid for a period not to exceed twelve (12) months from the date of issuance. The holder of the certificate of need may apply for an extension of twelve (12) months from the date of the initial expiration date of the certificate of need provided the applicant meets each of the extension criteria set out in this chapter. The running of the duration shall be tolled from the date of the filing of a complaint arising under §§ 22-21-260, et seq., Code of Alabama, 1975, or other judicial proceeding until such case is dismissed from the judicial process."[2] *Page 954 
The Court of Civil Appeals ruled that EAMC's request for a CON from SHPDA and the litigation resulting from that request tolled the expiration date for AMC's CON, because the SHPDA proceeding qualified as an "other judicial proceeding." We disagree with that conclusion.
 Analysis
SHPDA issued the present version of AMC's CON on December 7, 1992. Since § 410-1-11-.01 stipulates that a CON will expire after 12 months, AMC's CON was due to expire in December 1993. However, §410-1-11-.02 states, in pertinent part:
 "The holder of the certificate of need must incur a firm commitment or obligation as defined by statute and these rules within the initial twelve (12) month period, or if extended, within the extension period. Should the obligation be incurred before the expiration date of the certificate of need, then the certificate shall be continued in force and effect for a period not to exceed one year, or:
 (a) the completion of the construction project, where the certificate is for construction; . . . ."
On November 2, 1993, AMC entered into a construction contract with The Robins and Morton Group, thus incurring the commitment necessary to extend the duration of the CON beyond the December deadline. Under the terms of § 410-1-11-.02, AMC's CON was now due to expire upon completion of the construction of the hospital facility. However, §410-1-11-.04 places a restriction on such an extension. That section states, in pertinent part:
 "If the holder of the Certificate of Need fails to commence the construction project within the time period stated in the construction contract or to complete the construction project within the time period stated in the construction contract, then the Certificate of Need shall be terminated and shall be null and void."
Thus, the construction contract became the document dictating when AMC's CON would expire. Under that contract, construction was to begin no later than 180 days after the execution of the contract, or May 1, 1994, and construction was to be completed within 425 days of the commencement of construction, or no later than June 30, 1995, assuming construction began on May 1. Construction of the facility allegedly began on April 28, 1994; therefore, construction was to have been completed on June 27, 1995. However, on June 25, 1999, counsel for AMC filed an affidavit informing the court that "construction on the hospital has not begun." In other words, AMC failed to have its facility completed by the deadline imposed in the contract, which means that by the terms of §410-1-11-.04, AMC's CON expired in June 1995.[3] Consequently, the only way AMC's CON could have been extended is if a "complaint" was filed under § 22-21-260 et seq., Ala. Code 1975, or "other judicial proceeding" before the CON's expiration date; that extension would have lasted "until such case is dismissed from the judicial process" §410-1-11-.01. *Page 955 
The Court of Civil Appeals, relying on this Court's decision in Roberts Health Care, Inc. v. State Health Planning Development Agency, 698 So.2d 106 (Ala. 1997), held that EAMC's application for a CON filed on November 9, 1994, to build an ambulatory surgery center in Auburn, qualified as an "other judicial proceeding" that tolled the expiration of AMC's CON. In Roberts Health Care, Inc., Roberts Health Care had obtained a CON to build a nursing-home facility as a joint venture with Regency Oaks Health Care Facility. Six days before the CON was to expire, Regency filed a declaratory-judgment action against Roberts concerning the project. Thus, the question before this Court was whether the filing of the declaratory-judgment action delayed the expiration of the CON under the provisions of § 410-1-11-.01.
The dispute between Regency and Roberts involved whether the CON was transferrable, which is addressed in § 22-21-270(e), Ala. Code 1975. Consequently, the Court found that Regency's declaratory-judgment action delayed the expiration of Roberts's CON. In dictum, the Court also stated that had the action not fallen within the confines of § 22-21-260 et seq., it would have held "that Regency had initiated an `other judicial proceeding.'" 698 So.2d at 110. According to the Court of Civil Appeals, SHPDA had argued in Roberts that the phrase "other judicial proceedings" referred only to actions arising under § 22-21-260 et seq., which included administrative actions, but not to actions falling outside of that title. This Court stated that SHPDA's definition of the phrase was too limited, and that a judicial proceeding was "`[a]ny proceeding wherein judicial action is invoked and taken.'" 698 So.2d at 110, quotingBlack's Law Dictionary (6th ed. 1990).
The Court of Civil Appeals applied this dictum to the present case and held that the phrase "other judicial proceedings" was broad enough to encompass "EAMC's own request for a CON to the SHPDA Board and that the litigation subsequent to that request tolled the time for [AMC's] CON."Auburn Med. Ctr., 847 So.2d at 949.
The Court of Civil Appeals, in applying the phrase "other judicial proceedings," misconstrued the alternative holding of Roberts Health Care
and broadened the meaning of that phrase beyond its plain meaning. This Court's understanding of SHPDA's argument in Roberts Health Care was that the phrase "other judicial proceedings" referred to court review of prior administrative proceedings specifically initiated under § 22-21-260
et seq. The Court rejected this reading, finding that "other judicial proceedings" also encompassed actions initiated in the circuit court, rather than through the administrative process, that deal in some manner with the subject of the CON, but that do not fall directly under §22-21-260 et seq. Thus, the Court was not saying in Roberts Health Care
that administrative cases that involve no subsequent court action qualify as "other judicial proceedings."[4]
The Roberts Health Care Court held, pulling its definition from Black'sLaw Dictionary, that "[a]ny proceeding wherein judicial action is invoked and taken" that involves the subject matter of the CON qualifies as an "other judicial proceeding." Black's Law Dictionary defines a "judicial action" as an "[a]ction of a court upon a cause, by hearing it, and *Page 956 
determining what shall be adjudged or decreed between the parties, and with which is the right [in] the case." Black's Law Dictionary 847 (6th ed. 1990) (emphasis added). Another definition of "judicial proceeding" in Black's, in addition to the one quoted in Roberts Health Care, is "[a]ny step taken in a court of justice in the prosecution or defense of an action." Id. at 849 (emphasis added). It is obvious from these definitions that a "judicial proceeding" refers to disputes in court and not administrative proceedings.
EAMC's filing of an application for a CON invoked an administrative review to determine whether the application should be granted; it did not begin a "judicial proceeding." Indeed, our own cases, which at times do not draw a sharp distinction between administrative and judicial proceedings, still would not allow us to label a request to the SHPDA Board for a CON as a "judicial proceeding." In Webster v. Byrd,494 So.2d 31 (Ala. 1986), this Court stated:
 "Where an administrative proceeding is conducted with the same safeguards as those provided in judicial proceedings, e.g., notice and opportunity to be present, information as to charges made and opportunity to controvert such charges, the right to examine and cross-examine witnesses, the right to submit evidence on one's behalf, the right to be heard in person, and the presence of an objective decision-maker, see Board of Education of Choctaw County v. Kennedy, [256 Ala. 478, 55 So.2d 511 (Ala. 1951)], that proceeding is quasi-judicial in nature . . . ."
494 So.2d at 34 (emphasis added). The proceedings described in Byrd share some characteristics with court proceedings, which is why they were called "quasi-judicial" proceedings. But the action that purportedly delayed the expiration of the CON in this case — filing an application for a CON — bears little, if any, resemblance to a court action.
The plain words of § 410-1-11-.01 discuss "judicial proceedings," not quasi-judicial proceedings or administrative proceedings; thus, EAMC's filing an application for a CON does not qualify as an action that delays the expiration of a CON. The first judicial proceeding stemming from the transactions in question came when EAMC sued SHPDA and AMC on July 11, 1997, seeking a review of SHPDA's denial of their CON application. Yet, as was pointed out above, AMC's CON had already expired in June 1995 by operation of law.
The Court of Civil Appeals reasoned that because SHPDA's final order denying EAMC's application listed AMC's CON as a reason for denying the application,[5] AMC's CON was either still in effect or was revived by SHPDA's order. But SHPDA's consideration of AMC's CON was part of the process SHPDA is required to go through when determining whether to grant a CON application to EAMC. Section 410-1-6-.06 requires SHPDA to consider "whether a need for the [proposed] project exists"; one of the factors included in that consideration is "[t]he probable effect of the proposed facility or service on existing facilities." § 410-1-6-.06. Thus, SHPDA was not specifically deciding on the validity of AMC's CON, nor would its order dealing with EAMC's CON have been considered binding on SHPDA had it later had an opportunity to determine the validity of AMC's CON. In *Page 957 
any event, AMC's CON had expired as a matter of law in accordance with SHPDA's Rules and Regulations in June 1995, and nothing in those rules gives SHPDA the power to resurrect it.
Accordingly, the trial court correctly determined that AMC's CON had expired by operation of law and that it was therefore void. The decision of the Court of Civil Appeals is reversed and the case is remanded for the Court of Civil Appeals to enter an order in accordance with this opinion.
REVERSED AND REMANDED.
Houston, See, Lyons, Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
[1] Alabama Admin. Code (SHPDA Rules and Regulations) § 410-1-2-.19
defines a certificate of need as
 "[a] permit required by law before which no person, except as exempted by statute, shall acquire, construct or operate a new institutional health service or acquire major medical equipment, or furnish or offer, or purport to furnish a new institutional health service, or make arrangement or commitment for financing the offering of the new institutional health service or acquiring the major medical equipment."
[2] Section 410-1-11-.01 was amended in February 2000; it now reads differently from § 410-1-11-.01 quoted here. The version quoted here is the version in effect at the time of the proceedings in this case.
[3] SHPDA informed AMC by letter dated August 15, 1994, that the construction contract met the requirement of a firm commitment or obligation and that it could proceed with the project. Even if we assume that SHPDA's letter of approval extended the deadlines in the contract by approximately three months and that construction could not start until the day after this approval (and nothing indicates that SHPDA's approval extends the periods designated in a contract), AMC still did not have construction completed within 425 days of August 15, 1994.
[4] Even if this was not the Court's meaning, this portion of RobertsHealth Care was clearly dicta; thus, we are not bound by it.
[5] SHPDA's order stated, in part, that "`[t]he Board finds . . . that sufficient period of time has not yet elapsed to justify the Board['s] disregarding the authorized [AMC] facility in its need analysis.'" AuburnMed. Ctr., 847 So.2d at 945.