284 So.2d 257

**Gary P. ALIDOR**

v.

**MOBILE COUNTY COMMISSION et al.**

**SC 522.**

Supreme Court of Alabama.

Sept. 27, 1973.

Gary P. Alidor, pro se.

554

Maury Friedlander, Mobile, for appellees.

MERRILL, Justice.

This is an appeal by a taxpayer in Mobile County from a decree denying the taxpayer-plaintiff's prayer for an injunction and dismissing the complaint with prejudice.

The plaintiff sought to enjoin the Mobile County Commission and the individual members thereof from taking any action whereby the County would sell $4,500,000.00 in the principal amount of Road, Bridge and Drainage Facilities Bonds and to pledge as payment the proceeds derived from the special ad valorem tax authorized to be levied by the County under the provisions of Amendment XVIII to the Constitution of Alabama, as last modified and amended (relating to Mobile County Road Bonds), including the increase to 5½ mills in the rate of the special tax resulting from the application of the Amendment to the Constitution that was proposed by Act 116, passed at the Third Special Session in 1971, amending Section 217 of the Constitution, adopted on May 30, 1972, and proclaimed ratified on June 8, 1972, and known as the Classification Amendment. This Amendment divides all property in the state into three classes and provides for the assessment thereof at the following ratios of assessed value to fair and reasonable market value: Class I. Property of utilities—30%, Class II. All property not otherwise classified—25%, Class III. Agricultural, forest and residential property—15%.

Plaintiff alleged that a sale of the proposed bonds would be illegal because the County did not have the lawful authority to levy the special ad valorem tax at said increased rate.

Defendants filed an answer and cross bill and issue was joined.

The facts are those set out in the complaint that are admitted by the answer, those set out in the cross bill that are admitted in the answer thereto and the testimony of the Tax Assessor of Mobile County in the form of an affidavit and stipulated by the parties. The trial court denied the injunction and dismissed the complaint.

The taxpayer contests many rulings of the trial court in brief. Inasmuch as we are affirming the decree of the trial court, we are not treating the questions as fully as they are treated in the decree which requires 35 pages in the transcript. We proposed to mention and comment briefly on the points, but the few who might be particularly interested would be better informed if they secured a copy of the decree of the trial court.

The assignments of error charge that the trial court erred in refusing the injunctive relief and in dismissing the complaint. We follow the order of appellant's brief in our consideration of the matters argued on appeal.

1. Amendment CCCI.

■ The appellant argues that the trial court did not comply with the provisions of Amendment 301, which pertains to Mobile County, and relates to the division of proceeds from special taxes levied in that county. The trial court held that Amendment 301, "having been improperly submitted, as aforesaid, is, therefore, not a part of the Constitution of Alabama, as amended, * * *" and that holding is supported by the cited case of Hooper v. State, 206 Ala. 371, 89 So. 593.

The reason for this holding is that the Act submitting the proposed amendment, Act 406, Acts of Alabama 1969, Vol. 1, p. 796, provided in § 2 that:

"If a majority of the qualified electors of Mobile County participating in the election on the adoption of this amendment shall vote for the adoption thereof, then the approval of this amendment expressed by the vote in said county in favor of its adoption shall of itself authorize the changes herein proposed, and in that event no additional election by the electors of said county shall be required to authorize the same. * * *"

At the election held on December 16, 1969, a majority of the electors of the state ratified the Amendment but a majority of the voters of Mobile County voted against it. On January 25, 1973, the Attorney General issued an opinion that the amendment was "not effective or operative in the (Mobile) county." It was stipulated that no other elections had been held in Mobile County on the question.

The trial court held that the amendment was submitted in such a way as to make its effectiveness depend upon ratification by the electorate of the state *and* the electorate of Mobile County.

In Johnson v. Craft, 205 Ala. 386, 87 So. 375, this court said:

"* * * It (the Constitution) commits to no body, officer, or agent any authority or power whatever to change or modify or suspend the effect or operation of its mandates or its prohibitions; the instrument itself prescribes the exclusive modes by which it may be altered or amended, or its effect and operation changed. * * * Only through a constitutional convention, called and convened as provided in the existing organic law, or through amendment proposed and adopted as provided in the existing organic law, can the Constitution be altered or changed. * * *"

Therefore, when Act No. 406 made ratification dependent on the electorate of Mobile County, it added a "body" not permitted by the Constitution and the Act was rendered inefficacious, even though the amendment was ratified, because it contained an unconstitutional condition. We, as did the trial court, note that this case is distinguishable from Swaim v. Tuscaloosa County, 267 Ala. 509, 103 So.2d 769, because there, the condition that the voters of Tuscaloosa County must ratify the amendment was included in the amendment itself and not in the Act submitting it as here. This court said that "the amendment itself stated that if a favorable vote is given it by the electors of Tuscaloosa County voting in the election on the amendment, then such a subsequent election will be unnecessary"; and since a majority in Tuscaloosa County did vote for the amendment, "the county may issue its bonds under the amendment without incurring the additional time and expense of holding such a subsequent election," and upheld the validity of the amendment.

We agree that Amendment 301 was not operative or effective in Mobile County.

2. Tax Assessor's Report of February 7, 1973.

■ The Classification Amendment, Section 217(d) states that when the tax assessor has completed the assessment book "for the ad valorem tax year immediately following the adoption of this amendment * * * he shall certify to each authority * * * the amount of ad valorem tax that will be produced * * *."

The tax assessor, in an obvious attempt to comply with this section, sent a document to the county commission in which he said, "I wish to report to you the following:" Appellant argues that a "report" is not a "certificate" and is not in compliance with Section 217(d), and furthermore, that the report did not give "the amount of ad valorem tax [to] be produced." Actually, the report stated that the county would lose 13.5% of its assessed value based on the assessed value of the same property as it was assessed for the year 1972.

Appellant contends that the failure to "certify" and to state the "amount" was a fatal noncompliance with the constitutional requirements. The trial court held that there was no merit in these contentions and that the "report" substantially met the requirements of the Classification Amendment.

It has been held (1) that a certificate of a public officer is a written statement and signed, but not necessarily nor usually sworn to, State v. Abernethy, 190 N.C. 768, 130 S.E. 619; (2) to "certify" is to testify to in writing; to make known or establish as a fact. "The word is not essential to a certificate." Cook v. Ziff Colored Masonic Lodge, No. 119, 80 Ark. 31, 96 S.W. 618; (3) a signed written statement that fails to state, "It is hereby certified" nevertheless "complies with the meaning of the word 'certificate,' and is therefore a certificate in substance, and that is sufficient." State v. Schwin, 65 Wis. 207, 26 N.W. 568.

While the "amount" would have been more appropriate than the percentage given in the report, only a simple arithmetical procedure was necessary to get the correct amount. We find no reversible error in the trial court's holding on these matters.

3. Report of February 7, 1973 Premature.

■ Appellant states in brief:

"We have not found in the pleadings, the proof, or the trial court's decree, *any* statement or reason for the extremely early *February 7, 1973* attempted certification by the Tax Assessor to the Mobile County Commission."

Appellant argues that the final determination as to market value could not be made until objections are heard by the Board of Equalization, which hearings begin in June of each year, Tit. 51, § 107; and the assessments complained of here were reported to the governing body of the county in February.

It must be remembered that the Classification Amendment provided for an adjustment of the loss of revenue to the county (or a city) under the new classification. It is easily understandable that if residential, agricultural and commercial property had been previously assessed at 30% of its value, the reduction to 15% and 25% would be a rather serious financial loss to the county. The amendment provided for this adjustment in subsection (d) as follows:

" * * * If it shall appear that the estimated ad valorem tax receipts from any levy so estimated shall be less than the receipts from the same levy during the next preceding ad valorem tax year, then the levying authority shall increase each tax rate by such millage as is necessary to produce revenue that is not less than and that is substantially equal to that received during such immediately preceding tax year. It is further provided that any and all millage adjustments shall be made in increments of not less than ½ mill. *The adjustment herein required shall be made only one time and shall be made in the ad valorem tax year immediately following the adoption of this amendment.*" (Emphasis supplied)

It is obvious that when, in his "report" or "certificate" of his estimate of a loss of 13.5% on February 7, the tax collector was trying to give the county governing body all the time he could to make the adjustment allowed by the amendment. Time was of the essence because this was a "one

time" adjustment and had to be made before October 1, 1973, or never.

The evidence shows that the tax assessor had completed the assessment and that the Board of Equalization had complied with Tit. 51, § 104, which required the Board to "review, revise, correct and fix the assessment values made by the tax assessor."

It is conceded that the Board of Equalization had not heard the objections to the assessments scheduled for June, and we agree with the trial court that this was not necessary.

It is common knowledge that exceptions to assessments occur in a very small percentage of assessments (there were only 518 in Mobile County) ; and it is possible for an objecting taxpayer to carry his appeal to this court if dissatisfied with the result of his appeal to the circuit court. Appeals take time and the appeal procedure could delay the finalizing of all the assessments for over a year. But the amendment required the adjustment to be done in 1973. To hold that all assessments had to be final before the adjustments could be made would allow one taxpayer to nullify the last two sentences of subsection (d). Such a conclusion would be unreasonable and we do not think that such an intention can be attributed to the Legislature which proposed the amendment or to the people who ratified it.

4. Millage Increase Covers Subsequent Year.

■ Appellant also argues that the "one time" adjustment could apply only to that one tax year (1973) and to no subsequent years.

*Constitutions* are made for practical purposes and look to practical ends, and in construing them, we are to take into consideration the conditions which confronted the Constitution-makers, and, if possible, give the instrument such construction as will carry out the intention of the framers, and make it reasonable rather than absurd. Houston County Board of Revenue v. Poy-

ner, 236 Ala. 384, 182 So. 455; Tucker v. State, 231 Ala. 350, 165 So. 249.

Courts will attempt to give meaning to a legislative enactment and it is presumed that the Legislature did not do a vain and useless thing. In re Opinion of the Justices, 267 Ala. 114, 100 So.2d 681; Haralson v. State, 260 Ala. 473, 71 So.2d 79, 43 A.L. R.2d 1343.

To hold that the special millage tax adjustment is good for only one year would render the adjustment provision of the amendment absurd and unreasonable. The millage adjustment must be applicable as long as bonds of the county are outstanding for payment of the principal and interest on which the special tax may lawfully be levied.

5. Automobiles and Utilities.

■ Appellant complains that the tax assessor did not take into consideration the amount of any difference in the assessed valuation of motor vehicles and utilities in presenting his estimate. Since motor vehicles are assessed for the *preceding* tax year, it was not possible for the tax assessor to know that exact figure until the beginning of the next tax year.

As to utilities, Tit. 51, § 175 provides that such property is assessed by the State Department of Revenue, and that assessment is not required to be fixed until "the first day of July, or as soon thereafter as practicable." Not only would this be late for the adjustment, but the court found that the 1972 utilities' assessment by the Department of Revenue was based on 30% and under the amendment it was still 30%, so there was no change in the rate so far as utilities were concerned.

6. Resolution Levying the Tax.

■ We come now to the contention that the resolution of the Mobile County Commission, adopted in February, 1973, levying the ad valorem tax, is deficient in that it did not contain express language ordering the maximum permissible rate at which the

special tax would be levied for the current and subsequent years, and also, that in reciting the authority under which the county commission was proceeding, no reference was made to the Classification Amendment.

The opinion of the trial court sets out pertinent parts of the resolution and then discusses this contention, and states that the omission " * * * is the result of a clerical error in the drafting of the resolution that is self correcting, cf. Ex parte Roberson, 123 Ala. 103, 26 So. 645; Ex parte Biddle, 258 Ala. 190, 61 So.2d 803. In addition to said self correcting error of omission, said resolution also contains a self correcting error of commission, i. e., the words 'Section 71 of Title 51, Code of Alabama, Recompiled 1958' in the third paragraph thereof quoted above should read 'the Classification Amendment'."

Actually, the reference to "Section 71 of Title 51," is appropriate to the time the levy was made because it provides in pertinent part:

> "The court of county commissioners or other court of like jurisdiction, at the regular February term in each year, shall levy the amount of general taxes required for the expenses of the county for the current year, * * * and at the same time levying the amount of special taxes required for the county for the current year, * * *."

It is obvious from the resolution that the commission was acting under the Classification Amendment and we find no reversible error in the trial court's holding that the omissions were self-correcting.

7. Public Hearing.

■ Appellant contends that no public hearing was held by the commission as required by subsection (e) of the amendment. As already pointed out, subsection (d) permits an adjustment at the one designated time, "in the ad valorem tax year immediately following the adoption of this amendment." Subsection (e) allows for future increases in the rate subject to certain con-

ditions, one of which is a public hearing. Each of these subsections deal with separate matters and the conditions in (e) have no bearing on the millage adjustment authorized under (d).

8. The Estimate of the Tax Assessor.

Appellant argues generally that the estimate of the tax assessor does not comply with the Classification Amendment. The amendment requires him to do the estimating and the evidence is without conflict that he did it based upon the facts before him at a time prior to the time for the commission to levy special taxes and complete enough to give the necessary financial status to the commission.

■ The courts will not grant an injunction against a public official or a public body when to do so would involve a review of their judgment which is not arbitrary, made in bad faith or in the exercise of fraud, whether it be a mandatory injunction or a restrictive injunction. Huddleston v. Humble Oil & Refining Co., 260 Ala. 384, 71 So.2d 39; Terrell v. Marion County, 250 Ala. 235, 34 So.2d 160; Mullins v. Board of Education of Etowah County, 249 Ala. 44, 29 So.2d 339; State v. City of Mobile, 248 Ala. 467, 28 So.2d 177. There is no charge and no evidence that any action of commission or omission on the part of the tax assessor in this matter was either arbitrary, made in bad faith, or in the exercise of fraud.

This applies to any other discrepancies of form rather than substance which may have been mentioned in brief but not noted in this opinion, such as not making an assessment list in alphabetical order. This could not affect the estimate he was required to make under the Classification Amendment.

The trial court did not deem it necessary to respond to the cross bill and that action is not raised on this appeal.

Affirmed.

HEFLIN, C. J., and HARWOOD, MADDOX and FAULKNER, JJ., concur.