These are consolidated appeals by the City of Huntsville and certain named City officials (City) from both a preliminary order and a final decree enjoining the promotion of a City of Huntsville Fire Department employee to the rank of District Fire Chief. The circuit court based its order on a finding that "advancement bypassing" had occurred as a result of the procedure utilized in making the employee's appointment.
We reverse.
For the information and protection of the City's employees, an "Employee Handbook" was compiled and distributed. A portion of the handbook outlines the procedure by which promotion through the fire department takes place:
 "Three very important factors are considered in the promotional procedure for the fire profession. One is to devise a system that will insure the most qualified and deserving candidate(s) be selected, to insure the system is fair and impartial, and that all employees be made thoroughly familiar with it in order to eliminate misunderstandings. The following procedure is adopted toward these goals:
"Qualifications
 "The minimum qualifications hereafter stated will apply to all candidates who are eligible for promotion within the Huntsville Fire Department. . . . It is important that the candidates(s) selected have the skills, knowledge, abilities and personal characteristics that are necessary as a prerequisite to perform the required duties of the newly acquired job classification.
 "A. Each promotional candidate must be a member of the City of Huntsville Fire Department ranking classifications.
 "B. Each candidate must be in good standing having no disciplinary action during the twelve month period preceding the date of the examination. Disciplinary action is defined as written reprimands, suspensions without any pay, demotion, and disciplinary probation when due to the grounds of action as listed in the handbook.
 "C. Each candidate must possess an overall satisfactory performance evaluation on the last official rating prior to the date of examination.
 "D. Each candidate for promotion must make application for promotional examination to the Director of Personnel according to the directions stated on the examination announcement. The proper application forms for examinations will be available for completion *Page 1355 
at the Personnel Department, Third Floor, Municipal Building."
Although the applicants for all fire department positions are required to complete these standardized steps in order to qualify for the position sought, the fire chief has the discretionary authority to appoint qualified persons to positions above the classification of captain.
Additionally, the handbook provides the procedure for bringing employment grievances, including an appeals procedure:
"Section 7: PERSONNEL COMMITTEE AND APPEALS PROCEDURE
". . .
"Appeals Procedure
 "A grievance may exist when an employee does not agree with the following actions:
"(a) Advancement bypassing
"(b) Job classification
"(c) Assignment changes
"(d) Unsafe working conditions
 "(e) Discrimination on the basis of race, age, sex, religion or national origin.
 "Step 1: The employee shall file his grievance to his department head who shall have five (5) working days from the receipt of the written grievance to investigate, review, and prepare a written answer to the grievance. No employee will be coerced, restrained, or discriminated against for presenting a grievance.
 "Step 2: If the employee is dissatisfied with the answer received from the department head, he has five (5) working days within which to appeal to the Personnel Committee, which must give their answer within ten (10) working days from receipt of the written grievance. The decision of the Personnel Committee must be concurred in by the Mayor.
 "Step 3: If an employee is dissatisfied with the answer received from the Personnel Committee and concurred in by the Mayor, he shall have a right to appeal to the City Council. The employee shall file written notice with the Director of Public and Employee Relations within five (5) working days indicating his decision to appeal to the City Council. The City Council will schedule a hearing. All employees have the right to be represented by himself or whomever he chooses. The decision of the City Council is the final decision.
 "The employee initially files the grievance with the department head but he is also responsible for notifying all immediate supervisors that he is filing said grievance."
Walter Moseley, the Huntsville Fire Chief, advertised an opening for the position of District Fire Chief, which advertisement set out prerequisites to be met by the applicant in order to be considered for the position. These prerequisites were in addition to those overall requirements found in the handbook and were developed by Chief Moseley for this particular position.
The additional criteria required that the applicant 1) be a captain with three years of experience, and 2) have served for a period of time in the training division under Chief Moseley's supervision. The advertisement explained that the training division would "be used for training of future district chiefs for upgrading the training of the fire department."
In the exercise of his appointive authority, and using these criteria, on January 6, 1981, Chief Moseley named James Barkley to the position of District Fire Chief, effective January 12, 1981. On January 7, 1981, Appellees, all twenty-two of whom are captains with the Huntsville Fire Department (Employees), instituted both a grievance procedure with the City of Huntsville and a civil suit for injunctive relief with the Circuit Court of Madison County. Employees claimed that Chief Moseley, in establishing the additional prerequisites, had effectively precluded all captains of the Huntsville Fire Department except James Barkley and another man who chose not to apply for the position. Employees further alleged that Barkley had been promoted, not on the basis of experience or training, but because *Page 1356 
of his close personal relationship with Chief Moseley; i.e., "advancement bypassing" had occurred.
Employees, in their petition for injunctive relief filed with the circuit court, acknowledged the City's personnel grievance procedure and declared that grievances in regard to this matter had been filed with the proper City of Huntsville department head. They went on to state, however, that the final decision in a case proceeding under the City's grievance procedure is made by the city council and that the appeals process in reaching the council could take months; therefore, Employees reasoned:
 "[U]nless the [City is] restrained and enjoined, until the [Employees'] grievances can be heard, from filling the District Chief vacancy with the Defendant, James Barkley, the [Employees] and others will suffer immediate and irreparable injury, loss and damage. There appears to be no authority for removing an employee from a position with the City of Huntsville Fire Department once he has assumed the duties of said position.
 "The Court's issuance of a restraining order and an injunction will maintain the status quo until the [Employees'] grievances have been heard by the proper authority with the City of Huntsville.
 "WHEREFORE, [Employees] pray that the [City] be temporarily restrained, preliminarily enjoined, and permanently enjoined, from filling the vacancy of District Chief for the City of Huntsville Fire Department with James Barkley and/or from allowing James Barkley to assume the duties of District Fire Chief, . . . until the [Employees'] grievances concerning said matter have been decided by the proper authorities with the City of Huntsville, Alabama."
The circuit court issued a temporary restraining order on January 7, 1981, which forbade ". . . the filling of the vacancy of District Chief with James Barkley even though the promotion had already occurred." At a January 25, 1981, hearing for preliminary injunction, the circuit court found that the City of Huntsville's "Employee Handbook" did not contain a definition of "advancement bypassing," the ground upon which Employees based their claim. The Court, however, defined "advancement bypassing" as:
 "[T]he promotion of a less qualified employee over one or more qualified competitors on the basis of personal or other considerations which are not relevant to the providing of the best services to the citizenry."
The circuit court found that 1) its duty was to determine whether there was probable cause to believe that "advancement bypassing" had occurred and could be the basis of a legitimate grievance under the City of Huntsville's procedures and 2) the grievance procedure adopted by the City of Huntsville was the proper method for determining whether "advancement bypassing" had, in fact, occurred. The circuit court was careful to add that its order, granting the preliminary injunction, was in no way an assessment of James Barkley's qualifications but was injunctive relief designed to allow Employees to proceed with their grievances.
Employees' grievances were ultimately appealed to the city council. The council issued its decision on March 6, 1981, stating that the council found that bypassing had occurred, although no definition of "advancement bypassing" appeared in the handbook. The council further stated that the City was not empowered to remove an employee without "cause" and, therefore, the promotion of James Barkley would stand as made.
On April 28, 1981, the minutes of the city council were entered into evidence in a hearing before the circuit court, and on April 30, 1981, the circuit court entered its final judgment. The court's order stated that bypassing had occurred and that James Barkley must be removed from the position of District Chief. Furthermore, the court ordered that the notice advertising for applicants to fill the position must set out requirements drawn so as not to permit bypassing to re-occur. Again, however, the circuit court affirmatively stated that its *Page 1357 
order in no way prejudiced James Barkley's right to apply or reflected upon Barkley's qualifications for the position.
These appeals followed. In its appeal from the preliminary injunction, the City contends that the circuit court erred in that it determined the rights of the parties before all available administrative remedies had been exhausted. We find this argument to be without merit.
Alabama has adopted the "doctrine of exhaustion of administrative remedies." This doctrine "requires that where a controversy is to be initially determined by an administrative body, the courts will decline relief until those remedies have been explored and, in most instances, exhausted." FraternalOrder of Police, Strawberry Lodge v. Entrekin, 294 Ala. 201,209, 314 So.2d 663, 670 (1975). Entrekin approved the "exhaustion of administrative remedies" doctrine found inUnited States v. Western Pacific Railroad Co., 352 U.S. 59,77 S.Ct. 161, 1 L.Ed.2d 126 (1956), which applies "where a claim is cognizable in the first instance by an administrative agency alone." By that doctrine "judicial interference is withheld until the administrative process has run its course. . . ."Entrekin, at 210, 314 So.2d 663.
The hearing of this case on its merits before the circuit court was not held and the final judgment was not rendered until the Employees had taken their grievances through the entire City appeals procedure. The circuit court's interlocutory decree specifically found that the substantive issues of whether favoritism had been shown and whether the resultant "advancement bypassing" had occurred were for the City to determine. Furthermore, the court held that the "proper vehicle for determination of those issues is the grievance procedure outlined by the City," and ordered that "all grievances filed by the Employees regarding any charge of advancement bypassing arising out of the promotion of James Barkley to district chief be treated as one joint case and be decided by the authorities of the City of Huntsville." By granting the preliminary injunctive relief, the circuit court was merely preserving the status quo and permitting the grievance procedure to go forward as prescribed in the "Employee Handbook."[1]
The City next urges that the circuit court erred when it interfered with the City's broad discretion in determining and applying its employee selection process. With this contention we agree.
The law in Alabama has consistently been that the decision of a governmental agency, when made within the scope of the agency's authority, will not be enjoined unless the decision was made arbitrarily, capriciously, in bad faith, or as a part of a fraud. See Alidor v. Mobile County Commission, 291 Ala. 552, 284 So.2d 257 (1973); and Brammer v. Housing Authority ofthe Birmingham District, 239 Ala. 280, 195 So. 256 (1940).
The Court of Civil Appeals, in Hughes v. Jefferson CountyBoard of Education, 370 So.2d 1034 (Ala.Civ.App. 1979), enunciated the standard against which to test an administrative agency's action in determining whether there has been arbitrariness, capriciousness, bad faith, or fraud:
 "A determination by an administrative agency is not `arbitrary' or `unreasonable' where there is a reasonable justification for its decision or where its determination is founded upon adequate principles or fixed standards. State Department of Pensions and Security v. Whitney, 259 So.2d 810
(Ala.Civ.App. 1978).
 "If reasonable minds may well be divided as to the wisdom of administrative board's actions, or there appears some reasonable basis for the classification *Page 1358 
made by the board, such action is conclusive and the court will not substitute its judgment for that of the administrative body."
Our review of the record convinces us that, when measured against the Hughes standard, neither Chief Moseley's selection process nor the city council's ultimate decision was arbitrary, capricious, in bad faith, or fraudulent. Indeed, the "reasonable basis" spoken of in Hughes, supra, is clearly met in Chief Moseley's stated purpose to develop additional criteria for the selection of the district fire chief — that is, the upgrading of the fire department personnel as a whole.
In deference to the Employees' emphasis upon the city council's characterization of Chief Moseley's action as "advancement bypassing," we acknowledge that this tends to lend some credence to the trial court's final decree. The Employees' contention is premised upon the supposition that the "advancement bypassing" proscription applicable to the promotional procedures through the classification of captain is equally applicable to the promotion of a district fire chief. Therefore, insist the Employees, given the "advancement bypassing" finding by the city council, the trial court merely accepted this finding and enforced its mandate. The problem with this conclusion lies in the error of its premise. Indeed, the term, "advancement bypassing," through its maltreatment and misapplication, has infested this case throughout. We do not here attempt to define the term; but, whatever its definition, "advancement bypassing" is an inappropriate characterization, where, as here, the fire chief selected the appointee from among candidates of equal rank, utilizing the prerequisites as prescribed by the City personnel director and supplemented by Chief Moseley.
We further acknowledge that the city council's reference to its not being empowered to remove an employee without "cause" is misplaced, because the issue before the council, in the grievance proceedings, was the validity of the promotional process and not its authority to remove the appointee from office. Here again, however, this inappropriate language does not render erroneous the council's ultimate conclusion that the delegation of discretionary employment authority rests in the fire chief.
Having concluded that the evidence of record discloses no evidentiary basis for a finding that the fire chief's exercise of his discretionary employment authority is tainted by "arbitrariness, capriciousness, bad faith, or fraud," we hold, therefore, that the order of the circuit court permanently enjoining the promotion of James Barkley to the position of District Fire Chief exceeded the permissible boundaries of judicial review of administrative decisions.
As to the appeal from the judgment in case 80-302 (temporary injunction):
AFFIRMED.
All the Justices concur.
As to the appeal from the judgment in case 80-509 (permanent injunction):
REVERSED AND RENDERED.
TORBERT, C.J., and SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
MADDOX, FAULKNER and ALMON, JJ., dissent.
[1] Assuming, without deciding, that the trial court incorrectly defined "advancement bypassing," we do not agree that the trial court's interlocutory order "rendered ineffective" the City's grievance procedure. Moreover, our affirmance of the temporary injunction order is not to be construed as embracing the trial court's finding or rationale; it only means that the exercise of its discretion to temporarily "freeze" the status of the parties, under the instant circumstances, will not be disturbed on appeal.