HOUSTON, Justice.
Wiley J. Chapman, Jr., sought a declaratory judgment against Marengo County; Abner W. Dunn, Jr., as the revenue commissioner of Marengo County; and the county commission of Marengo County (all hereinafter collectively referred to as “Marengo County”), requesting the trial court to hold that the ad valorem tax rates imposed by Marengo County for its general fund and its road and bridge fund were void on the basis that they exceeded the amount allowed by Amendment 373 of the Alabama Constitution of 1901. Marengo County filed a motion to dismiss, which the trial court denied. Thereafter, Chapman moved for a summary judgment, which the trial court denied. Marengo County moved for summary judgment, which the trial court granted. In entering the summary judgment for Marengo County, the trial court, citing Alidor v. Mobile County Commission, 291 Ala. 552, 284 So.2d 257 (1973), held that certain computer-generated information used by Marengo County to increase millage rates for the 1978-79 ad valorem tax year was “simply another method of calculating the anticipated ad valorem tax revenues and was effective to perform the computations envisioned by [Amendment] 373(e) ... [and] that the action ... of [Marengo County] in adjusting millage rates pursuant to [Amendment] 373(e) was lawful.” Chapman appeals. We affirm.
Amendment 373(e) provided a mechanism whereby, for a limited time, taxing authorities could increase the millage rates of their taxes on property without obtaining legislative permission and voter approval for such an increase, provided that estimated revenues from such taxes were anticipated to be less than 120% of the previous year’s receipts from such taxes. Amendment 373(e) reads in pertinent part as follows:
“For the ad valorem tax year beginning October 1, 1978, when the tax assessor of each county shall complete the assembly of the assessment book for his county for that ad valorem tax year and the computation of ad valorem taxes that will be paid upon such assessment, he shall certify to each authority within liis county that levies an ad valorem tax the amount of ad valorem tax that will be produced by every levy in that ad valorem tax year but excluding for this purpose any assessment of new taxable property not previously subject to taxation (except ‘escaped’property as defined by law) added to the tax rolls of such county for the ad valorem tax year in which such certification is made that was not included on the tax rolls for the next preceding ad valorem tax year. Any county ... at any time not later than September 30, 1979, may increase the rate at which any ad valorem tax is levied ... provided that the amount of the above-described certification of anticipated tax receipts with respect to such tax is less than 120 per cent of the actual receipts from such tax for the ad valorem tax year beginning October 1, 1977, such increase to be effective for the ad valorem tax years beginning on and after October 1, 1978; *1125 •provided, that any such millage increase shall not exceed in mills the total of (i) the number of additional mills that is necessary, when added to the millage rate imposed ivith respect to such tax on each dollar of taxable property situated in the taxing authority for the ad valorem tax year beginning October 1, 1977, to produce revenue that is not less than and that is substantially equal to that received by the taxing authority ivith respect to such tax during such immediately preceding ad va-lorem tax year, plus (ii) a number of additional mills equal to 20 per cent of the total mills imposed by that taxing authority with respect to such tax on each dollar of taxable property situated in the taxing authority for the ad valorem tax year beginning October 1, 1977.”
(Emphasis added.)
Chapman extensively argues that because the “actual” tax revenues Marengo County collected for the 1978-79 ad valorem tax year were 69% more than the ad valorem tax revenues it collected in the 1977-78 ad valo-rem tax year, the millage rate increase imposed in 1978-79 exceeded the increase allowed by Amendment 373(e) and was therefore unlawful.
The “actual” amount of ad valorem taxes collected in the 1978-79 ad valorem tax year is immaterial to a determination of whether Marengo County complied with the provisions of Amendment 373(e) in increasing the millage rates for that year, because for the tax year beginning October 1, 1978, any assessment of new taxable property (except “escaped property” as defined by law), not previously subject to taxation, was to be excluded from the calculation of the estimated tax revenues that would be produced in that year. Rather, in accordance with Amendment 373(e), the allowable 20% increase in the millage rate referred to the prior millage rates of taxes as increased, not to the revenues actually derived from those taxes as increased. The 69% increase in tax revenues actually collected in 1978-79 resulted from new property added to the tax rolls in the 1978-79 tax year. The undisputed facts are as follows:
After discussing the implications of Amendment 373(e) at a meeting on May 25, 1979, Marengo County made an “adjustment” to its previously adopted tax rates by increasing the general fund tax rate from 5 mills to 7 mills and by increasing the road and bridge fund tax rate from 2.5 mills to 3.5 mills. According to the minutes of the meeting, this “adjustment” was based on “estimated figures as to the values of property in Marengo County under the new law [Amendment 373 of the Alabama Constitution of 1901] ... because [there] was no way to give accurate figures until a complete abstract [was] made.” At a meeting on July 16,1979, Marengo County again considered the matter of the “adjustment” of ad valorem millage rates pursuant to Amendment 373(e). The minutes of that meeting specifically refer to a “computer printout,” which the University of Alabama had prepared through a program instituted by the Association of County Commissions of Alabama. This program, called “The Ad Valorem Tax Assistance Program,” was begun to assist county officials in interpreting and applying various provisions of Amendment 373(e). As part of this program, the then director of the Center for Business and Economic Research at the University of Alabama developed blank forms for tax assessors to complete with information on county ad valorem property values, collections, etc., that could be used in conjunction with a computer program to compute which taxes could be raised pursuant to Amendment 373(e) and by how much. Once these forms were completed, they were sent to the University of Alabama and run through a special computer program devised for the purpose of determining the estimated tax receipts required to be made by Amendment 373(e). Using data provided through the forms completed by the local tax assessors, if the computer program indicated that a county qualified to increase taxes under Amendment 373(e), the county would receive a computer printout of the maximum increases in tax millage that, based on the calculation of estimates, that county could enact under Amendment 373(e).
Blank forms were distributed to Marengo County, which it completed and mailed to the Association of County Commissions of Ala *1126 bama. Thereafter, Marengo County received a computer printout indicating that, within the bounds of Amendment 373(e), for the ad valorem tax year beginning October 1, 1978, millage rates for the general fund could be increased to 8.11 mills and the millage rates for the road and bridge fund could be increased to 4.06 mills:
★★★★★★★★★★★★★★-A- FISCAL YEAR 1977-78 ★★★★★★★★★★★★★★★
HISTORICAL
LEVY COLLECTED MILLAGE RATE
GENERAL FUND ( GF ) o O OO U5 00 CO
ROAD AND BRIDGE (“RB”) o lO Oi <N 0¾ i“H r-i
★★★★★★★★★★★★★★★ FISCAL YEAR 1978-79 ★★★★★★★★★★★★★★★
ESTIMATED REVENUE REVENUE W/O PAR ESTIMATED REVENUE WITH PAR ADJUSTMENT ESTIMATED REVENUE WITH PAR ADJUSTMENT + 20%
TO BE MILLAGE COLLECTED RATE TO BE MILLAGE COLLECTED RATE TO BE MILLAGE COLLECTED RATE
GF 272143 GF 238598 GF 167726 00 Í-1 > — I T-i tH CR o o
RB 136072 RB 119299 RB 83863 p O Ci zo lo CO CO cn o
Based on these calculations, Marengo County, acting in accordance with provisions of Amendment 373(e), voted to increase the general fund millage rate to 8 mills and the road and bridge millage rate to 4 mills for the 1978-79 tax year. That is, upon receipt of the computer printout estimate of the anticipated 1978-79 ad valorem tax revenues, which showed the “anticipated” revenues for the 1978-79 ad valorem tax year, excluding new taxable property not previously subject to taxation except escaped property as defined by law, to be less than 120% of the “actual” tax receipts for the 1977-78 ad valo-rem tax year, Marengo County exercised the authority granted it under Amendment 373(e) and increased the millage rates for the general fund and the road and bridge fund accordingly.
We note Chapman’s argument that the tax assessor did not properly “certify” to Maren-go County the anticipated revenues to be generated in the 1978-79 ad valorem tax year as required by Amendment 373(e).
In this case, the facts reveal that in performing his duty as'requested by Marengo County, the tax assessor submitted tax records to the director of the Center for Business and Economic Research at the University of Alabama for use in calculating the anticipated revenues for the 1978-79 ad valo-rem tax year. By using this information supplied by the tax assessor, the Center provided the tax assessor with a computer printout, which he then presented to Marengo County and on which Marengo County based its increase of the millage rates for the general fund and the road and bridge fund.
Suffice it to say, without further discussion, that for purposes of this appeal the tax assessor’s submission of the statistical data evidencing the anticipated revenue and the allowable increase in millage rates for the 1978-79 ad valorem tax year in the form of a computer printout to Marengo County constituted substantial compliance with the “certification” requirement of Amendment 373(e), on which the Marengo County officials acted in their official capacity to increase the millage rates within the amount allowed under Amendment 373(e). See, e.g., Alidor v. Mobile County Commission, 291 Ala. 552, 284 *1127 So.2d 257 (1973), and Perry County v. Selma, Marion & Memphis R.R., 65 Ala. 391 (1880).
Based on the foregoing, we affirm the summary judgment for Marengo County.
AFFIRMED.
MADDOX, SHORES, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.