35 So.3d 575 (2009)
CITY OF MONTGOMERY
v.
TOWN OF PIKE ROAD and Gordon Stone, in his official capacity as mayor of the Town of Pike Road.
1071690.
Supreme Court of Alabama.
June 5, 2009.
Rehearing Denied October 16, 2009.
*576 Joe Espy III and J. Flyn Mozingo of Melton, Espy & Williams, PC, Montgomery; and Walter R. Byars and Kimberly O. Fehl, City of Montgomery Legal Department, for appellant.
J. Doyle Fuller and Susan G. Copeland of Law Office of J. Doyle Fuller, P.C., Montgomery, for appellees.
MURDOCK, Justice.
The City of Montgomery ("the City") appeals from a summary judgment in favor of the Town of Pike Road ("the Town"), a municipal corporation in Montgomery County, and Gordon Stone, in his official capacity as mayor of the Town, in an action challenging the Town's right to annex three parcels of land in Montgomery County. We reverse and remand.

I. Factual Background
In 2007, Montgomery County ("the County") and the Montgomery County Commission ("the Commission") sued the Town and Mayor Stone. Subsequently, the County and the Commission (hereinafter referred to collectively as "the County plaintiffs") amended their complaint to add the City as a defendant.
The City filed an answer to the complaint as well as a cross-claim against the Town, which contained essentially the same averments and sought similar relief as the County plaintiffs' complaint. Both the City and the County plaintiffs challenged the Town's purported annexation of three parcels of property. The City's cross-claim, for example, averred that, in August 2007, the Town "passed ordinances in an invalid attempt to annex the [parcels]." *577 More specifically, the City alleged that the purported annexations were void for, among other things, "lack of contiguity with the corporate limits of [the Town]" and failure to comply with the "statutory requirements for annexation." The City and the County plaintiffs sought a judgment declaring the annexations void and writ of quo warranto nullifying the annexations.
All parties moved for a summary judgment. On April 16, 2008, the trial court entered an order purporting to grant the summary-judgment motions filed by the City and the County plaintiffs and to deny the summary-judgment motion filed by the Town and Stone. The order declared, in pertinent part, "that the purported annexations of [two of the parcels] by [the Town] are legally flawed for failure to comply with the applicable annexation statute, are void and neither parcel/property is annexed into the Town of Pike Road."[1]
Subsequently, the Town and Stone moved to alter, amend, or vacate the judgment, arguing, in pertinent part:
"4. On June 2, 2008, counsel for [the Town] became aware of Act No. 2008-481, which was passed during the 2008 Regular Session of the Alabama Legislature. Act No. 2008-481 attached hereto as Exhibit 2.
"5. Act No. 2008-481(b) provides:
"`[(b)] In addition to the provisions of subsection (a), in all cases in which there has been after the year 1990, an attempt to organize the inhabitants of any territory as a municipal corporation under the laws of this state and the judge of probate of the county in which the territory is situated has entered an order that the inhabitants of the territory are incorporated as a town or city, as the case may be, the incorporation is hereby validated ab initio, and any extensions or other alterations of the corporate limits of the municipality which occurred prior to the effective date of the act adding this subsection are also validated ab initio and the territory is confirmed as a part of the corporate limits of the municipality, any law to the contrary notwithstanding.... This subsection shall not apply to ... any extension or alteration of its corporate limits which occurred prior to the effective date of this act where litigation is pending on the incorporation prior to the effective date of the act adding this subsection.'
"6. The Act became effective upon its approval by the Governor on May 29, 2008.
"7. Since [the Town] has annexed [the parcels in ordinances] passed prior to May 29, 2008, and because there is no litigation pending on the incorporation of [the Town] in 199[7], the Legislature has validated this previous annexation and thus, this litigation is moot.
"....
"13. Since the passage of Act No. 2008-481 has validated ... [the Town's] annexation[ ], this litigation is now moot and due to be dismissed."
(Emphasis omitted.)
On August 15, 2008, the trial court vacated its April 16, 2008, judgment. It "conclud[ed] that Act No. 2008-481 [had] validat[ed] the annexations by [the Town] at issue in this case" and entered a judgment dismissing the claims of the County plaintiffs and the City "in their entirety." On September 4, 2008, the trial court denied motions of the City and the County plaintiffs to alter, amend, or vacate its *578 August 15, 2008, judgment. The City appealed.
On appeal, the City challenges both the constitutionality of Act No. 2008-481, Ala. Acts 2008 ("the Act"), which amended § 11-41-8, Ala.Code 1975, as well as the applicability of § 11-41-8(b) to the annexations at issue. It asks this Court to reverse the trial court's August 15, 2008, judgment and to remand the case with instructions for the trial court to reinstate its April 16, 2008, judgment.

II. Standard of Review
"`This court reviews de novo a trial court's interpretation of a statute, because only a question of law is presented.' Scott Bridge Co. v. Wright, 883 So.2d 1221, 1223 (Ala.2003). Where, as here, the facts of a case are essentially undisputed, this Court must determine whether the trial court misapplied the law to the undisputed facts, applying a de novo standard of review."
Continental Nat'l Indem. Co. v. Fields, 926 So.2d 1033, 1034-35 (Ala.2005). Likewise,
"`[o]ur review of constitutional challenges to legislative enactments is de novo.' Richards v. Izzi, 819 So.2d 25, 29 n. 3 (Ala.2001). However, we must approach this review in light of the following:
"`"[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government." Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)." '
Board of Water & Sewer Comm'rs of Mobile v. Hunter, 956 So.2d 403, 408-09 (Ala. 2006) (quoting McInnish v. Riley, 925 So.2d 174, 178 (Ala.2005) (emphasis omitted)).

III. Analysis
Before it was amended in 2008 by the Act, § 11-41-8 provided:
"In all cases prior to June 13, 2007, where there has been an attempt to organize the inhabitants of any territory as a municipal corporation under this article, and the judge of probate of the county in which the territory is situated has entered an order that the inhabitants of the territory are incorporated as a town or city, as the case may be, pursuant to Section 11-41-4, but the attempted incorporation is invalid because of some irregularity in the procedure followed, the incorporation of that municipality so attempted to be organized and with respect to which the order has been made is validated ab initio in accordance with the description of the territory attempted to be incorporated as the description is contained in the order or, if the description of the territory attempted to be incorporated is not contained in the order in accordance with the description of the territory contained in the petition of the electors filed with the judge of probate, notwithstanding any failure to comply with the requirements respecting the signatures to or contents of the petition for incorporation, any irregularities as to publication or posting, or any other failure to comply with the procedures set forth in that article or otherwise required by law. This section shall not apply to the incorporation of any municipality held to be invalid by a court of competent jurisdiction by judgment entered prior to June 13, 2007, or in any matter where litigation is pending relating to the incorporation of the municipality."
*579 The Act (approved May 29, 2008) was entitled: "An act [t]o amend Section 11-41-8 of the Code of Alabama 1975, as last amended by Act 2007-385, [Ala. Acts 2007,] to further provide for [1] the incorporation of certain municipalities incorporated under certain conditions and [2] any extension of the corporate limits related thereto." The Act provided, in full:
"Section 1. Section 11-41-8 of the Code of Alabama 1975, as last amended by Act 2007-385, is further amended to read as follows:
"`§ 11-41-8.
"`(a) In all cases prior to June 13, 2007, where there has been an attempt to organize the inhabitants of any territory as a municipal corporation under this article, and the judge of probate of the county in which the territory is situated has entered an order that the inhabitants of the territory are incorporated as a town or city, as the case may be, pursuant to Section 11-41-4, but the attempted incorporation is invalid because of some irregularity in the procedure followed, the incorporation of that municipality so attempted to be organized and with respect to which the order has been made is validated ab initio in accordance with the description of the territory attempted to be incorporated as the description is contained in the order or, if the description of the territory attempted to be incorporated is not contained in the order in accordance with the description of the territory contained in the petition of the electors filed with the judge of probate, notwithstanding any failure to comply with the requirements respecting the signatures to or contents of the petition for incorporation, any irregularities as to publication or posting, or any other failure to comply with the procedures set forth in that article or otherwise required by law. This section shall not apply to the incorporation of any municipality held to be invalid by a court of competent jurisdiction by judgment entered prior to June 13, 2007, or in any matter where litigation is pending relating to the incorporation of the municipality.
"`(b) In addition to the provisions of subsection (a), in all cases in which there has been after the year 1990, an attempt to organize the inhabitants of any territory as a municipal corporation under the laws of this state and the judge of probate of the county in which the territory is situated has entered an order that the inhabitants of the territory are incorporated as a town or city, as the case may be, the incorporation is hereby validated ab initio, and any extensions or other alterations of the corporate limits of the municipality which occurred prior to the effective date of the act adding this subsection are also validated ab initio and the territory is confirmed as a part of the corporate limits of the municipality, any law to the contrary notwithstanding. Any municipality validated pursuant to this subsection, including any extensions or alterations of the corporate limits, shall be subject to provisions in Sections 11-41-1 and 11-49-80 with regard to assuming responsibility to control, manage, supervise, regulate, repair, maintain, and improve all public streets or parts thereof lying within the incorporated limits. This subsection shall not apply to the incorporation of any municipality held to be invalid in a court of competent jurisdiction by judgment entered prior to the effective date of the act adding this subsection or in a matter where litigation is pending on the effective date of this act relating to the incorporation of the municipality, or to any extension or alteration of its corporate limits which occurred prior to the effective date of this act where litigation *580 is pending on the incorporation prior to the effective date of the act adding this subsection.'
"Section 2. This act shall become effective immediately following its passage and approval by the Governor, or its otherwise becoming law."
A comparison of the Act with § 11-41-8 reveals that subsection (a) of the Act is a virtual reiteration of what was then § 11-41-8. It is thus apparent that the only substantive change made to § 11-41-8 by the Act was the addition of subsection (b).

A. The Text of § 11-41-8
By its own terms, § 11-41-8(b) does not address all annexation elections. Instead, § 11-41-8(b) expressly concerns itself only with the annexation elections of "the municipalit[ies]" which have had their incorporation elections validated ab initio by the curative operation of § 11-41-8(a). Nothing in the text of § 11-41-8(b) expressly addresses questions regarding any irregularities in the annexation election itself.[2]
Thus, § 11-41-8(b) is intended to remove the uncertainty concerning the validity of annexations that would otherwise exist because of the fact that the annexations were executed by a city or town that, at the time of the annexation election, may not have been validly incorporated. In other words, the purpose of § 11-41-8(b) is simply to ensure that the initial invalidity of the incorporation of a city or town does not itself serve to taint a subsequent annexation by that city or town, given the fact that the legislature has since chosen, through § 11-41-8(a), to retroactively validate that faulty incorporation.
This understanding of § 11-41-8(b) comports with the plain language of that section and that of § 11-41-8(a), which of course must be read in pari materia with one another. "The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute." IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992). In so doing, this Court must give words in a statute their "plain meaning." Id. Further, this Court must
"`consider the statute as a whole and... construe the statute reasonably so as to harmonize [its] provisions.' McRae v. Security Pac. Hous. Servs., Inc., 628 So.2d 429, 432 (Ala.1993). Additionally, `[s]ections of the Code originally constituting a single act must be read in pari materia in order to "produce a harmonious whole."' Ex parte Jackson, 625 So.2d 425, 428 (Ala.1992) (quoting 2A Norman J. Singer, Sutherland Statutory Construction § 46.05 (5th ed.1993))."
Proctor v. Riley, 903 So.2d 786, 789-90 (Ala.2004).[3]
Section 11-41-8(a) begins by stating that "[i]n all cases prior to June 13, 2007, where there has been an attempt to organize *581 the inhabitants of any territory as a municipal corporation ... and the judge of probate ... has entered an order[4] that the inhabitants of the territory are incorporated as a town or city," that incorporation is "validated ab initio." The end of the first sentence of § 11-41-8(a) explains that the "irregularit[ies] in the procedure[s]" the legislature had in mind include failure to comply with signature or content requirements, failure as to publication or posting requirements, and any other failure to comply with procedures required by law for incorporation elections.[5]
The first sentence of § 11-41-8(b) echoes the first sentence of § 11-41-8(a) as a way of syntactically laying the context or predicate for what is being added to the law by the rest of that sentence, i.e., clarifying the status of any annexations associated with certain cities or towns whose incorporations were in question but that are validated ab initio by subsection (a).[6] In a clause that must be read in pari materia with the parallel sentence of § 11-41-8(a), the first sentence of § 11-41-8(b) reiterates for municipal-incorporation efforts after 1990 that those efforts are validated ab initio. Specifically, it states that "in all cases in which there has been ... an attempt to organize the inhabitants of any territory as a municipal corporation... the incorporation is hereby validated ab initio, and any extensions or other alterations of the corporate limits of the municipality which occurred prior to May 29, 2008, are also validated ab initio." § 11-41-8(b), Ala.Code 1975 (emphasis added). The reference to "the" municipality is a reference to the municipality that falls within the description contemplated by the first part of the sentence, which, when read in pari materia with § 11-41-8(a), is a municipal corporation that has had to take advantage of the ab initio validation provided by the statute in order to overcome irregularities in the election that purportedly brought the municipal incorporation into existence in the first place.
Further, as has been noted, § 11-41-8(b) contains no language comparable to the language in § 11-41-8(a) that, as to the annexation election itself, seeks to remove procedural irregularities (e.g., signature requirements, publication requirements, and other procedural defects) as the source of taint for the annexation election. *582 Similarly, the reference in § 11-41-8(b) to annexations is not, as in the case of the statute's reference to incorporations in § 11-41-8(a) and (b), to some "attempt" or to some effort to annex that is "invalid" because of irregularities, but rather to annexations which actually have occurred: "any extensions or other alterations of the corporate limits of the municipality which occurred." § 11-41-8(b), Ala.Code 1975 (emphasis added). In other words, these references are to annexation elections that, for all appearing, are valid and, in and of themselves, are not tainted by irregularities.

B. Omissions in § 11-41-8(b)
In addition to comporting with the plain language of § 11-41-8, the foregoing interpretation also explains what would otherwise be irrational omissions by the legislature in § 11-41-8(b). First, we note that in § 11-41-8(a) the legislature creates an exception to the ab initio validation of incorporations where the validity of the incorporation election is the subject of pending litigation or, a fortiori, where a court judgment already has invalidated the incorporation. Moreover, these exceptions to the validation of underlying incorporations are repeated in § 11-41-8(b), the focus of which is purportedly annexations. Yet, § 11-41-8(b) expresses no exception to the ab initio validation of annexations where the annexation is the subject of pending litigation or has been declared invalid because of irregularities in the annexation election itself.[7]
The explanation for the absence of any exception either for pending litigation challenging the validity of the annexation election or, a fortiori, for a final court judgment actually invalidating the annexation election does not come from the fact that the legislature intended to create, was willing to accept, or simply overlooked the fact that it was creating, such logical inconsistencies. Rather, the explanation for these omissions comes from the fact that § 11-41-8(b) does not have as its focus the validation of annexation elections that could be questioned in their own right that is, because of their own procedural irregularities.

C. Avoiding Constitutional Infirmities
Interpreting § 11-41-8(b) as not having been intended by the legislature to validate annexation elections that suffer from their own irregularities avoids a constitutional separation-of-powers problem. As this Court has noted: "[T]he core judicial power is the power to declare finally the rights of the parties, in a particular case or controversy, based on the law at the time the judgment becomes final." Ex parte Jenkins, 723 So.2d 649, 656 (Ala. 1998). The legislature certainly possesses the power to amend the law, "but it may not do so in a manner that impinges on the judicial power by retroactively changing the laws that were incorporated into the judgment when it became final." 723 So.2d at 658. To interpret § 11-41-8(b) as the trial court has done would raise questions as to a possible conflict between the law as enacted by the legislature and final judgments concerning the validity and invalidity of annexation elections. It is our duty, if possible, to avoid such conflicts when interpreting a statute. See, e.g., Jenkins, 723 So.2d at 658 (stating that "`"[i]t is the duty of the court to construe a statute so as to make it harmonize with the constitution if this can be done without doing violence to the terms of the statute and the ordinary canons of construction."'" (quoting Board of Educ. of Choctaw *583 County v. Kennedy, 256 Ala. 478, 482, 55 So.2d 511, 514 (1951) (other citation omitted))); Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 10, 18 So.2d 810, 815 (1944) ("Where the validity of a statute is assailed and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other would be valid, the courts should adopt the construction which would uphold it.... Or, as otherwise stated, it is the duty of the courts to adopt the construction of a statute to bring it into harmony with the constitution, if its language will permit."); Lunsford v. Jefferson County, 973 So.2d 327, 330 (Ala.2007) ("`"We will not invalidate a statute on constitutional grounds if by reasonable construction it can be given a field of operation within constitutionally imposed limitations."'" (quoting Town of Vance v. City of Tuscaloosa, 661 So.2d 739, 742-43 (Ala.1995), quoting in turn Mobile Hous. Bd. v. Cross, 285 Ala. 94, 97, 229 So.2d 485, 487 (1969))).
We note as well that the City argues that the trial court's interpretation of § 11-41-8(b) would cause the Act to run afoul of § 45 of the Alabama Constitution of 1901. Section 45 requires that "[e]ach law shall contain but one subject, which shall clearly be expressed in its title ...."
The Act was entitled: "An act [t]o amend Section 11-41-8 of the Code of Alabama 1975, as last amended by Act 2007-385, [Ala. Acts 2007,] to further provide for [1] the incorporation of certain municipalities incorporated under certain conditions and [2] any extension of the corporate limits related thereto." This Court has said that § 45 requires that "`the matter of [an] amendatory act must be germane to, suggested by, and supplemental to the subject of the section sought to be amended.'" City of Birmingham v. Merchants Cigar & Candy Co., 235 Ala. 204, 206, 178 So. 220, 221 (1938) (quoting State v. Smith, 187 Ala. 411, 417, 65 So. 942, 944 (1914)). Our understanding of § 11-41-8(b) makes it unnecessary for us to address the City's argument that the trial court's interpretation of that statute conflicts with § 45. We hold that § 11-41-8(b) was intended only to remove those doubts as to the validity of an annexation that otherwise would arise from the fact that the annexation was purportedly made by a city or town whose original incorporation was in doubt. Under this interpretation, § 11-41-8(b) is clearly "supplemental" to and "suggested by" the topic addressed in § 11-41-8(a), i.e., the validity of the existence of the city or town itself.

D. Avoiding Statutory Duplication
Any remaining doubt as to the correctness of the foregoing interpretation is removed upon consideration of the fact that the legislature separately enacted the act that is codified at § 11-42-5. Section 11-42-5 provides:
"Every annexation undertaken prior to May 1, 1998, under any statutory procedure for annexation by any municipality and which the annexation procedure has been completed, notwithstanding any irregularity or defect in the procedure, is ratified and confirmed and given effect in all respects as if all provisions of law relating to the annexation proceeding had been duly and legally complied with. This section shall not apply to any annexation or attempted annexation which, prior to May 1, 1998, has been held invalid by the Supreme Court of Alabama or by the Court of Civil Appeals of Alabama or by a final judgment of the circuit court in the county in which the annexation was completed and from which judgment an appeal was not taken to the Supreme Court of Alabama or the Court of Civil Appeals of Alabama within the time provided *584 by law for taking appeals, or to any annexation the validity of which is an issue in a pending action commenced prior to May 1, 1998."
It is apparent that § 11-42-5 is for annexation elections what § 11-41-8(a) is for incorporation elections, i.e., it serves to retroactively ratify annexation elections that might otherwise be deemed invalid because of irregularities in the procedures in those elections. Yet, if § 11-41-8(b) is applied according to the interpretation adopted by the trial court, then it is a virtual duplication of § 11-42-5, except that § 11-42-5 does have built into it the expected exceptions for annexations whose validity in relation to their own procedural irregularities is being questioned in litigation and annexations that have been invalidated by a final judgment of a circuit courtthus avoiding any potential constitutional separation-of-powers conflict.
"`"There is a presumption that every word, sentence, or provision [of a statute] was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used."'" Ex parte Children's Hosp. of Alabama, 721 So.2d 184, 191 (Ala. 1998) (quoting Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App.1997), quoting in turn 82 C.J.S. Statutes § 316 (1953)). Moreover, "[c]ourts will attempt to give meaning to a legislative enactment and it is presumed that the Legislature did not do a vain and useless thing," Alidor v. Mobile County Comm'n, 291 Ala. 552, 558, 284 So.2d 257, 261 (1973), and "the Legislature, in enacting new legislation, is presumed to know the existing law." Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 297 (Ala.1998). We presume the legislature was aware of the existence of § 11-42-5 when it amended § 11-41-8 by adding subsection (b) and that it did not intend to repeat an existing provision of the Code through its enactment. The presence of § 11-42-5 in our Code easily corroborates the conclusion that § 11-41-8(b) pertains only to the validation of annexations by towns or cities whose incorporations require the validation provided by § 11-41-8(a).[8]

IV. Conclusion
In sum, established rules of statutory constructiongiving the words in a statute their plain meaning, construing statutory provisions in pari materia, avoiding constitutional infirmities, and presuming meaning in every legislative enactment dictate that § 11-41-8(b) does not apply to all annexations by any city or town. Section 11-41-8(b) clearly validates annexations that were legally proper in themselves but that could be called into question by the failure of the city or town that performed the annexation to be properly incorporated. By enacting § 11-41-8(a), the legislature has retroactively validated the incorporation of such cities or towns; by enacting § 11-41-8(b) the legislature has removed any taint the original, questionable incorporation might otherwise have given annexations by such cities or towns.
In this case, the Town is a duly incorporated municipality; its incorporation has never been in doubt or questioned. Therefore, § 11-41-8(b) does not apply to the Town's purported annexations *585 at issue in this action. Accordingly, the trial court erred in concluding that § 11-41-8(b) required a dismissal of the claims of the County plaintiffs and the City in their entirety. The trial court's August 15, 2008, judgment is therefore reversed, and the cause is remanded for further proceedings consistent with this opinion.[9]
REVERSED AND REMANDED.
LYONS, PARKER, and SHAW, JJ., concur.
WOODALL, STUART, and BOLIN, JJ., concur in the result.
COBB, C.J., recuses herself.
WOODALL, Justice (concurring in the result).
The main opinion's strained analysis has not convinced me that § 11-41-8(b), Ala. Code 1975, does not apply to the Town's purported annexations at issue in this action. However, because I am convinced that Act No. 2008-481, Ala. Acts 2008 ("the Act"), violates § 45 of the Alabama Constitution of 1901, I concur in the decision to reverse and remand for further proceedings.
"Each law shall contain but one subject, which shall be clearly expressed in its title." § 45, Ala. Const.1901. "[A]nnexation and incorporation are two distinct subjects," City of Birmingham v. City of Vestavia Hills, 654 So.2d 532, 536 (Ala. 1995), and Act No. 2008-481 purports to validate both defective incorporations and defective annexations. Thus, the Act clearly violates § 45.
STUART and BOLIN, JJ., concur.
NOTES
[1] The order expressly addressed only two of the three parcels at issue in this action.
[2] Section 11-41-8(b) contains for annexation elections no language comparable to that in § 11-41-8(a) that cures irregularities with regard to signature and publication requirements for petitions for incorporation and other procedural defects of incorporation elections.
[3] In Karrh v. Board of Control of Employees' Retirement System of Alabama, 679 So.2d 669, 672 (Ala.1996), this Court elaborated on "the principle that statutes are to be construed as a whole, so as to harmonize their parts, if possible," stating: "`A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole.' " (Quoting 2A Singer, Statutes and Statutory Construction § 46.05 (1992).)
[4] The order of the probate court to be made pursuant to § 11-41-4, Ala.Code 1975, as referenced in § 11-41-8(a), is part of the procedure for certifying the incorporation election results. It does not entail an adjudication on the merits as to any possible irregularities in or invalidity of the election. That section requires, instead, the probate judge to obtain the total number of inhabitants in the area being incorporated and then to enter an order that those inhabitants are incorporated as a town or city, thus formalizing the apparent results of the election.
[5] Section 11-41-8 is a statute in the nature of a "curative act," which is "a retrospective statute, curing defects in legal proceedings where they are in their nature irregularities only and do not extend to matters of jurisdiction." Horton v. Carter, 253 Ala. 325, 328, 45 So.2d 10, 12 (1950). Specific to the present context, the purpose is "to place all cities in the same position as if the proceedings by which they had attempted to adopt their charters had been in all things regular and valid." 62 C.J.S. Municipal Corporations § 30 (1999). Thus, § 11-41-8 aids "de facto municipal corporations," which exist where "there [is] a general or special charter under which the corporation might be created, formed, or organized, an attempt in good faith to incorporate or organize thereunder, a colorable compliance with the statutory requirements, and a subsequent actual user of the corporate franchise." 62 C.J.S. Municipal Corporations § 29 (footnotes omitted).
[6] It is this addition to the law to which the opening phrase of § 11-41-8(b), "[i]n addition," evidently refers.
[7] As discussed below, such exceptions are found in § 11-42-5, a statute that does have as its purpose the curing of defects in annexation elections themselves.
[8] The special writing asserts that we have engaged in "strained analysis" in some respect. We do not find the corroboration provided by the presence of § 11-42-5 in our law to be strained, nor do we find any of the other grounds noted for our holding to be strained. Further, the fact that we are able to and do note multiple grounds for our conclusion is indicative of the strength of that conclusion, not of straining to reach it.
[9] We note that the August 15, 2008, judgment was based solely on the Act. Consequently, the trial court pretermitted consideration of other grounds asserted by the Town and Stone for alteration of the April 16, 2008, judgment, including allegations that there remained genuine issues of material fact precluding a summary judgment for the City and the County plaintiffs and the fact that the earlier judgment did not expressly address the validity of the third parcel at issue in this case. Therefore, we decline to direct the trial court on remand to reinstate its earlier judgment as requested by the City. In remanding as we do, we express no view as to the merits of the Town and Stone's other objections to the April 16, 2008, judgment.